STATE OF WEST VIRGINIA

*v.*

DENCIL NORMAN ADKINS, *alias*

*Denzil Adkins*

(No. 13934)

Decided March 27, 1979.

*Kennad L. Skeen* for plaintiff-in-error.

*Chauncey H. Browning*, Attorney General, *Pamela Dawn Tarr*, Assistant Attorney General, for defendant-in-error.

NEELY, JUSTICE:

This is an appeal from a conviction of first degree, felony murder without a recommendation of mercy in the Circuit Court of Roane County. Two errors are assigned: first, appellant alleges that the State called witnesses who were not on the list of witnesses provided to defense counsel; second, appellant alleges he was convicted upon the uncorroborated testimony of an accomplice. We find no error and affirm.

According to the State's key witness, Teddy Lee Wayne, an accomplice, on 6 October 1975, Teddy Lee Wayne received a telephone call at his home in Parkersburg from George Johnson requesting that Mr. Wayne

follow him to Charleston as Mr. Johnson's car was giving him, Johnson, some trouble. En route at the Ripley exit of Interstate 77, the frame on Johnson's car broke and Johnson then asked Wayne to drive him to Spencer, West Virginia. In Spencer, Wayne parked his car and the two men proceeded to the Green Lantern, a local bar and restaurant. Mr. Johnson asked a waitress if the defendant, Dencil Adkins, had been in that morning; shortly thereafter, the defendant arrived and he and Johnson began to shoot pool. Wayne drank several cups of coffee and observed the pool game from a distance, and while the three men were thus engaged, the victim, Richard Lee Sprouse, a delivery salesman for the Parkersburg Distributing Company, arrived with a shipment of Strohs' beer for the restaurant and received fifty-eight dollars in cash.

The appellant and his two companions then left the Green Lantern, got in Wayne's car, and began to drive around Spencer, the directions being given by the appellant. The three men followed a beer truck for a short distance, made a series of brief stops, and pulled off the road at the Corder Bridge Tavern. Johnson got out of the car with something protruding from his pocket and began walking back down the road the way the three had come. After a few minutes the appellant told Wayne to drive slowly down the road, the appellant once again giving directions. From time to time, Wayne glanced in his rear view mirror and observed that they were being followed by a red beer truck. After traveling some distance, the appellant told Wayne to pull off at a wide spot on the road and to wait. A short time later a beer truck pulled in behind Wayne's car and Johnson and the victim, who had just made a beer delivery at the Corder Bridge Tavern and been paid for it, got out of the truck.

The appellant got out of Wayne's car and approached Johnson, who had a gun trained on the victim. While the appellant leaned against the side of the car, Wayne watched the victim and Johnson as they stood between the car and the truck. The victim handed Johnson his trucker's wallet which Johnson placed in his jacket;

then, he and Johnson disappeared from Wayne's view. Shortly thereafter, Wayne heard a shot. During this transaction, the appellant had remained in sight, leaning against Wayne's car. Johnson returned and both he and the appellant approached the beer truck, one of them putting the truck out of gear causing it to coast backwards off the road. Johnson and the appellant then returned to Wayne's car, Johnson carrying a wad of cash. The three men proceeded to return to Spencer with the appellant once again giving all the directions. In Spencer the appellant parted company with Wayne and Johnson, and Wayne drove Johnson back to his car at the Ripley exit of Interstate 77 and returned to Parkersburg.

The victim's truck was later discovered backed down over a hill with its front wheels touching the road and the State Police were notified. A State Policeman at the scene heard the victim moaning and discovered him across the street from the truck shot through the head. He died approximately six days later at Charleston General Hospital; the cause of the victim's death was total brain destruction suffered as a result of a gunshot wound.

I

Upon review of the entire record the Court finds that the appellant did not make a formal motion for a list of witnesses nor was such list ordered delivered to appellant's attorney by the court. When the appellant's attorney objected to the calling of witnesses who had not appeared on an informal list provided to defense counsel, the court inquired at length with regard to whether there was any actual prejudice in the way of surprise. It appears from the record that appellant's counsel was unable to demonstrate any actual surprise since the star witness, Teddy Lee Wayne, appeared as an eye witness to the murder on the State's answer to a Bill of Particulars filed four months before trial. In addition, the appellant had been orally informed by the prosecutor prior to trial that Wayne would be a witness. Unlike *State v. Cowan*, 156 W. Va. 827, 197 S.E.2d 641 (1973) upon which

appellant relies, the State was not in violation of any court ordered discovery and, in fact, the State caused no actual prejudice to the appellant.

## II

The appellant alleges that he was convicted upon the uncorroborated testimony of an accomplice. We find that the testimony of Teddy Lee Wayne was corroborated in a number of significant details by other witnesses. Melba Wissvchek corroborated appellant's presence at the Green Lantern on the morning of the murder when the victim arrived to deliver his shipment of beer and received the cash payment. Geneva Atkinson corroborated Wayne's testimony that Johnson and the victim were positioned between the car and the truck during the robbery. Finally, Lonnie Hughes corroborated the position of the beer truck after the murder. We agree with the Supreme Court of Appeals of our sister State of Virginia that the proper standard for evaluating corroborative evidence is as follows:

> The corroborative evidence, standing alone, need not be sufficient either to support a conviction or to establish all the essential elements of an offense. If those were the requirements, and the Commonwealth had at hand independent evidence sufficient to satisfy them, then the need to use accomplice testimony would not arise. *Allard v. Commonwealth,* ____ Va. ____, 243 S.E.2d 216, at 217 (1978) quoting *Dillard v. Commonwealth,* 216 Va. 820 at 823, 224 S.E.2d 137 at 140 (1976).

Notwithstanding the fact that the testimony of the accomplice was corroborated, the court gave defendant's instruction No. 19 in a modified form which read as follows:

> The Court instructs the jury that if they believe from the evidence in this case that the crime charged against the defendant rests alone upon the unsupported testimony of an accomplice, then they should scrutinize his testimony with care and caution.

This instruction complies with the requirements of *State v. Spadafore*, ___ W.Va. ___, 220 S.E.2d 655 (1975), so that appellant's argument in this regard fails on two counts: first, the testimony was corroborated; and, second, even if the testimony had been uncorroborated, an appropriate cautionary instruction was given.

We find that the appellant's citation to syllabus point 2 of *State v. Price and Bruce*, 114 W.Va. 736, 174 S.E. 518 (1934) as quoted in *State v. Bennett*, ___ W.Va. ___, 203 S.E.2d 699 (1974) for the proposition that a defendant cannot be convicted on the admission or confession of a co-conspirator after the conspiracy has ended to be inappropriate to the facts of this case because the quoted syllabus point is overly-broad; notwithstanding that fact it has been improperly quoted in a vexacious way numerous times by litigants as authority for a far broader proposition than that for which it was originally intended to stand. In order to avoid future confusion with regard to this syllabus point, it is expressly overruled today because it is so broad as to stand for a proposition which is not, and never has been, the law. The meaning of *State v. Price and Bruce, supra,* and *State v. Bennett, supra* is that the admission or confession of an accomplice either by way of a plea of guilty to the crime or in any other out-of-court statement cannot be introduced in evidence under some theory of agency as an admission against interest binding upon all participants in the conspiracy. To permit such an admission to be introduced against another accomplice would be an extension of the civil law of agency and partnership into the criminal field. Consequently, while an admission or confession alone cannot be introduced into evidence, there is absolutely no prohibition against testimony by an accomplice witness implicating the defendant in the crime when the defendant has an opportunity to cross-examine the accomplice and the accomplice is available in court for that purpose or his testimony and cross-examination is appropriately preserved in some other manner.

*Affirmed.*