354 S.E.2d 595

**STATE of West Virginia**

v.

**Russell E. LASSITER.**

**No. 17251.**

Supreme Court of Appeals of
West Virginia.

Feb. 25, 1987.

Robert H. McWilliams, Public Defender Corp., Second Judicial Circuit, Moundsville, for appellant.

David W. Johnson, Asst. Atty. Gen., Charleston, for appellee.

NEELY, Justice:

This is an appeal of a murder conviction from the Circuit Court of Marshall County. The appellant, an inmate in the State Penitentiary, was convicted of the premeditated murder of a fellow inmate, Grant Allen Yates. The jury returned the verdict with a recommendation of mercy. Appellant now assigns four errors. Appellant argues that: (1) the trial court erred in refusing his motion for a change of venue; (2) the trial court improperly conducted voir dire; (3) out-of-court statements of co-conspirators were improperly admitted into evidence; and (4) the court improperly denied certain of appellant's pretrial discovery requests. We find no error and affirm.

I

Appellant maintains that the court erred in denying his motion for a change of venue because the hostility evinced by residents of Marshall County was so great that he could not obtain a fair and impartial jury. Appellant bases this contention on the results of a survey administered by one of his experts. The survey results to which the appellant directs our attention are the following: 76% of those polled had either read or heard about recent inmate killings at the penitentiary; 42% believed that the defendants in the prison killing cases should be considered guilty unless they could prove their innocence; 44% believed it was unlikely that the wrong people had been charged in these killings; 83% indicated that they could not recommend mercy for an inmate convicted of murdering another prisoner; 83% believed that inmates would lie under oath to avoid being convicted; 87% believed that the inmates were not just victims of circumstance but were in prison because they were bad people; and 51% believed that people they knew would be upset with them if they were on the jury and voted not guilty.

■ Rule 21(a) of the *West Virginia Rules of Criminal Procedure* provides:

The circuit court upon motion of the defendant shall order the proceedings transferred as to him to another county if the circuit court is satisfied that there exists in the county where the prosecution is pending so great a prejudice against the defendant that he cannot obtain a fair and impartial trial at the place fixed by law for holding the trial.

In syllabus point 1 of *State v. Zaccagnini,* 172 W.Va. 491, 308 S.E.2d 131 (1983), we held:

" 'To warrant a change of venue in a criminal case, there must be a showing of good cause therefor, the burden of which rests on the defendant, the only person who, in any such case, is entitled to a change of venue. The good cause aforesaid must exist at the time application for a change of venue is made. Whether, on the showing made, a change of venue will be ordered rests in the sound discretion of the trial court; and its ruling thereon will not be disturbed, unless it clearly appears that the discretion aforesaid has been abused.' Point 2, syllabus, *State v. Woolridge*, 129 W.Va. 448, 40 S.E.2d 899 (1946)." Syllabus point 1, *State v. Sette*, 161 W.Va. 384, 242 S.E.2d 464 (1978).

*See* syl. pt. 1, *State v. Ginanni*, 174 W.Va. 580, 328 S.E.2d 187 (1985); syl. pt. 2, *State v. Williams*, 172 W.Va. 295, 305 S.E.2d 251 (1983); *see also* syl. pt. 4, *State v. Hall*, 171 W.Va. 212, 298 S.E.2d 246 (1982); syl. pt. 2, *State v. Gangwer*, 169 W.Va. 177, 286 S.E.2d 389 (1982).

■ In syllabus point 1 of *Keys v. Hey*, 164 W.Va. 132, 260 S.E.2d 837 (1979), this Court further held:

" 'Good cause shown' for change of venue, as the phrase is used in *W.Va. Constitution*, Article III, Section 14 and *W.Va. Code*, 62–3–13, means proof that a defendant cannot get a fair trial in the county where the offense occurred because of the existence of a locally extensive present hostile sentiment against him." Syl. pt. 1, *State v. Pratt*, 161 W.Va. 530, 244 S.E.2d 227 (1978).

*See also State v. Young*, 173 W.Va. 1, 311 S.E.2d 118 (1983); syl. pt. 1, *State v. Peacher*, 167 W.Va. 540, 280 S.E.2d 559 (1981); syl. pt. 6, *State v. Riley*, 151 W.Va. 364, 151 S.E.2d 308 (1967); syl. pt. 2, *State v. Loveless*, 142 W.Va. 809, 98 S.E.2d 773 (1957).

Similarly, although we have held that the countywide existence of a "present hostile sentiment against an accused ⋮.. is good cause for removing the case to another county," syl. pt. 2, *State v. Zaccagnini*, *supra*, this Court also held in syllabus point 1 of *State v. Gangwer*, *supra*, that

"[w]idespread publicity, of itself, does not require change of venue, and neither does proof that prejudice exists against an accused, unless it appears that the prejudice against the accused is so great that he cannot get a fair trial." *See* syl. pt. 2, *State v. Young, supra;* syl. pt. 2, *State v. Audia*, 171 W.Va. 568, 301 S.E.2d 199 (1983).

In *State v. McFarland*, 175 W.Va. 205, 332 S.E.2d 217, (1985), we held that:

Even though a majority of individuals surveyed in a county where a prosecution is pending, by way of a questionnaire, indicate that, based upon what they have heard or read, there is existing hostile sentiment in that county but that the defendant would receive a fair trial in that county, before a change of venue shall be granted the circuit court must be satisfied that there exists in the county where the prosecution is pending so great a prejudice against the defendant that he cannot obtain a fair and impartial trial. *W.Va.R.Crim.P.* 21(a).

In *McFarland*, "[a]ll of the persons surveyed, with the exception of one person who declined to complete the questionnaire, expressed the opinion that the appellant was guilty and that they had heard similar sentiments from other county residents. The majority of those surveyed, however, indicated that they thought the appellant could receive a fair trial in Hardy County." *Ibid*.

In *McFarland*, we found that the facts set forth in the record did not demonstrate an "extensive present hostile sentiment" on the part of the jury indicating that the defendant had been deprived of a fair trial. We therefore held that the trial judge did not abuse his discretion in denying the defendant's motion for a change of venue.

■ In the instant case, we are likewise unpersuaded that the trial judge abused his discretion. The questionnaire concerned public perception of inmates in general—it did not concern itself specifically with hostility toward Mr. Lassiter. Although the survey indicates some animosity toward inmates generally, it is insufficient to show that appellant could not receive a fair trial

in Marshall County. The statistics cited by the appellant are seductive, but it is important to note that only 54 residents of Marshall County were included in the survey. Seventy-four percent of those surveyed indicated that they could disregard the accused's past and render a verdict based solely on the evidence. Moreover, the appellant does not allege that *voir dire* revealed any indication of prejudice on the part of the jurors sufficient to show a need for a change of venue. *See McFarland, supra,* 175 W.Va. at 214, 332 S.E.2d at 226. The reliability of the survey is seriously called into question by the fact that, although 83% of those surveyed stated that they could not recommend mercy if the appellant were found guilty, a jury of twelve *unanimously* recommended mercy in the appellant's case.

On the record before us, we are unconvinced that the trial judge abused his discretion in denying the appellant's motion for a change of venue. Like the trial court, we are not persuaded that respondents in other counties would have answered general questions about attitudes toward inmates substantially differently. Accordingly, we find appellant's first assignment or error without merit.

## II

The appellant next contends that the trial judge conducted *voir dire* improperly. Although they overlap to a certain extent, appellant's second assignment can be broken down into four complaints: (1) the trial judge should have permitted counsel to conduct extensive individual *voir dire* of the prospective jurors; (2) the trial judge should have conducted individual *voir dire* of prospective jurors *in camera;* (3) the trial judge's *voir dire* of prospective jurors who indicated a relationship to a law enforcement officer was insufficiently extensive; and (4) the trial judge abused his discretion in failing to question prospective jurors regarding their ability to recommend mercy in a murder case.

█ The right to a fair trial is guaranteed by the Sixth and Fourteenth Amendments of the *Constitution of the United States* and by article III, section 14 of the *Constitution of the State of West Virginia.* Subsumed under the right to a fair trial is the right to a fair and impartial jury. *State v. Stonestreet,* 112 W.Va. 688, 166 S.E. 378 (1932); *State v. Lohm,* 97 W.Va. 652, 125 S.E. 758 (1924). Thus, "a fair trial requires a meaningful and effective *voir dire* examination." *State v. Pratt,* 161 W.Va. 530, 244 S.E.2d 227, 232 (1978). Accordingly, the trial court must conduct individual *voir dire* when a possibility of prejudice is shown. *State v. Neider,* 170 W.Va. 662, 295 S.E.2d 902 (1982).

█ However, individual *voir dire* is not required in every case. Individual *voir dire* is required only when a juror has disclosed a possible area of prejudice. *State v. Schrader,* 172 W.Va. 1, 302 S.E.2d 70 (1982). The determination concerning whether and the extent to which to permit individual *voir dire* rests within the sound discretion of the trial court, and is not subject to review in the absence of an abuse of discretion. *State v. Beacraft,* 126 W.Va. 895, 30 S.E.2d 541 (1944); *State v. Ashcraft,* 172 W.Va. 640, 309 S.E.2d 600 (1983). Whether a refusal to permit individual *voir dire* constitutes an abuse of discretion depends upon the facts of each case. *State v. Ashcraft, supra.*

In this case, the record reveals that the trial judge *did* conduct individual *voir dire* of all prospective jurors who indicated a potential bias against the appellant. The focus of the debate is over: (1) the fact that *counsel* (as opposed to the trial judge) was not permitted to conduct the *voir dire;* (2) the fact that the *voir dire* was not conducted *in camera;* and, (3) the *extent* of the individual *voir dire* of those jurors who indicated a potential bias.

█ As noted above, the manner in which the *voir dire* is conducted is a matter resting within the sound discretion of the trial court. *State v. Beacraft, supra; State v. Ashcraft, supra.* Accordingly, we have held that the trial court is free to determine whether *voir dire* shall be conducted by the court or by counsel. *State v. Pratt, supra.* Thus, the trial judge's deci-

sion to conduct *voir dire* himself was not an abuse of discretion.

■ Likewise, it was not an abuse of discretion to deny the appellant's motion to conduct individual *voir dire in camera.* Although we have indicated that *in camera,* individual *voir dire* may, under some circumstances, be the preferred procedure, *State v. Pendry,* 159 W.Va. 738, 227 S.E.2d 210 (1976), *overruled, in part, on other grounds, Jones v. W.Va. Penitentiary,* 161 W.Va. 168, 241 S.E.2d 914 (1978), we have never held that *in camera* individual *voir dire* is required. *See State v. Pendry, supra; State v. Angel,* 173 W.Va. 620, 319 S.E.2d 388 (1984). An inflexible rule of mandatory *in camera* individual *voir dire* would quickly grind this State's criminal justice machinery to a halt. Maintaining a flexible rule granting the trial judge discretion to conduct *in camera voir dire* frees the trial court from conducting such *voir dire* in cases where it is unnecessary, thereby permitting the court to devote its time and resources to the fair and expeditious administration of justice, including conducting *in camera voir dire* in cases where it *is* necessary.

In this case, individual *voir dire* was taken of all prospective jurors who indicated a potential bias. The *voir dire* might have been more extensive, and it may have been more effective in eliciting potential bias had it been conducted *in camera.* However, the trial judge's decisions in this regard were not *per se* a violation of the law, and on the facts of this case we do not believe that the trial judge abused his discretion.

■ The appellant also contends, however, that the trial judge's individual *voir dire* of prospective jurors who indicated a relationship to law enforcement officials was insufficiently extensive. We have held that the failure to permit *any individual voir dire whatsoever* of prospective jurors who are related to law enforcement officials constitutes reversible error. *State v. Pratt, supra; State v. Peacher,* 167 W.Va. 540, 280 S.E.2d 559 (1981); *State v. Ashcraft, supra.* However, our cases may be fairly read to require only that the trial judge ask individually each juror who either was or is related to a law enforcement official whether that relationship would bias him against the accused in any way. *State v. Pendry, supra; State v. Angel, supra; State v. Meadows,* 172 W.Va. 247, 304 S.E.2d 831 (1983); *State v. White,* 171 W.Va. 658, 301 S.E.2d 615 (1983); *State v. Beckett,* 172 W.Va. 817, 310 S.E.2d 883 (1983). Although it may be preferable in some cases to conduct more extensive, *in camera* inquiry, *State v. Pendry, supra,* such a decision rests within the sound discretion of the trial court. *State v. Beacraft, supra; State v. Ashcraft, supra.*

■ Four of the prospective jurors who ended up sitting on the panel disclosed a relationship to law enforcement officials. One juror had a first cousin who is a state policeman in California; one juror had a cousin who is a state policeman in Hundred, West Virginia; one juror's husband was a guard at the Marshall County Jail; and one juror's wife had a second cousin who is a retired judge on the Illinois Supreme Court. Each of these jurors was asked individually by the trial court whether that relationship predisposed him or her against the accused, and each replied that it did not. None of these jurors was challenged for cause by the appellant, and all of them joined in the recommendation of mercy. On these facts, we are not prepared to hold that the trial judge abused his discretion.

■ Finally, appellant claims that the trial court committed reversible error by refusing to ask the panel any questions concerning the jurors' ability to recommend mercy under the circumstances of this case. *See* Syl. pt. 7, *State v. Williams,* 172 W.Va. 295, 305 S.E.2d 251 (1983). In this case the jury returned a verdict of guilty with a recommendation of mercy. Accordingly, any error in this regard did not prejudice the appellant. Error not prejudicial to a defendant does not require reversal. *State v. Lane,* 168 W.Va. 490, 285 S.E.2d 138 (1981).

## III

In his third major assignment of error, the appellant contends that statements of co-conspirators were improperly admitted into evidence. The State's theory of the case was that the defendant and a co-conspirator, Mr. Bruce White, a fellow inmate at the penitentiary, jointly planned and executed the killing of Mr. Yates.

Over the objection of defense counsel, the State introduced statements of Bruce White through three inmate witnesses. At no time did the State attempt to call Mr. White as a witness, nor was Mr. White examined by the defense. Nonetheless, the State elicited testimony recounting statements made by Mr. White to the effect that: "There was going to be trouble; we are going to take care of business; he was going to close the visits on July 4 by causing a big lockdown; that he was going to take Allen Yates out." The State also elicited statements from an inmate to the effect that that inmate had heard Mr. White and a Mr. Anthony Audia state that "he [Audia] wanted White to either get his money from the punk [Yates] or take him out."

The appellant apparently contends that the admission of these out-of-court statements by co-conspirators violated his rights under the Confrontation Clause of the Sixth Amendment of the U.S. *Constitution*. The statements were admitted pursuant to Rule 801(d)(2)(E) of the *West Virginia Rules of Evidence*, which provides that statements by co-conspirators made "during the course and in furtherance of the conspiracy" are not hearsay, and are admissible. This provision is modeled on the federal rule, which has been interpreted to require that:

> Before the court allows into evidence statements made by one defendant against another under the co-conspirator exception, it must find "the existence of and the [defendant's] participation in the conspiracy" by a fair preponderance of independent evidence. *Fed.R.Evid.* 104; *United States v. Portsmouth Paving Corp.*, 694 F.2d 312, 320 (4th Cir.1982). *See also United States v. Ammar*, 714

F.2d 238, 247 (3rd Cir.1983); *United States v. Jones*, 542 F.2d 186, 202–203 (4th Cir.), *cert. denied*, 426 U.S. 922, 96 S.Ct. 2629, 49 L.Ed.2d 375 (1976).

*United States v. Scott*, 730 F.2d 143, 148 (4th Cir.1984), *cert. denied*, 469 U.S. 1075, 105 S.Ct. 572, 83 L.Ed.2d 512 (1985).

In the case before us there exists sufficient independent evidence to demonstrate the underlying conspiracy. The appellant admitted to inmate Baxter that "we are going to take the punk out"; and both inmate Baxter and inmate Hess testified that they *saw* the appellant and Bruce White actually commit the murder.

The appellant complains that the trial judge failed to make any explicit finding that the statements admitted were uttered at the time of and in the furtherance of a conspiracy as required by Rule 801(d)(2)(E). However,

> The requisite independent determination on the part of the Judge as to the existence of conspiracy need not be explicit. "Submission of the case to the jury, with instructions that it can consider co-conspirators' statements, is an indication that the court has found independent evidence establishing a prima facie case [of a conspiracy]."

*United States v. Scott, supra*, 730 F.2d at 148–49, citing *United States v. Lutz*, 621 F.2d 940, 947 (1980).

Appellant contends that *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), requires that the prosecution show that the out-of-court statements made by the non-testifying co-conspirator have some indicia of reliability. Appellant's interpretation of *Roberts* is plainly flawed. The Supreme Court stated in *Roberts*: "reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception." *Roberts, supra*, 488 U.S. at 66, 100 S.Ct. at 2539. The co-conspirators' exception to the hearsay rule is surely such an exception. The co-conspirators' exception was first approved by the United States Supreme Court in *United States v. Gooding*, 12 Wheat. (25 U.S.) 460, 6 L.Ed. 693 (1827), and its English roots can be traced

**506**

to the time of the French Revolution. *See* J. Levie, "Hearsay and Conspiracy: A Reexamination of the Co-Conspirators' Exception to the Hearsay Rule," 52 Mich. L.Rev. 1159, 1162–63 (1954). The trial court was therefore justified in inferring the requisite reliability of the out-of-court statements of the non-testifying co-conspirators from the fact that the statements fell within the firmly rooted co-conspirators' exception to the hearsay rule.

Appellant argues that the out-of-court statements of the non-testifying co-conspirators were introduced in violation of our holding in *State v. Adkins*, 162 W.Va. 815, 253 S.E.2d 146 (1979). There we stated in part at Syllabus Point 2:

> The proper rule concerning admissions and confessions of co-conspirators in the trial of another conspirator is that the admission or confession of an accomplice standing alone may not be introduced into evidence against another accomplice as an admission against interest; however, one accomplice may testify against another accomplice about the events surrounding the crime with which the defendant accomplice is charged, about the defendant accomplice's part in that crime, about events leading up to the formation of the conspiracy, and about the part the testifying accomplice played in the conspiracy, (including any incidental admissions) so long as the defendant accomplice has an opportunity to cross-examine the testifying accomplice and the testifying accomplice is called by the State for the purpose of giving detailed testimony and not for the purpose alone of demonstrating that the testifying accomplice has either confessed or pled guilty to participating in the crime with which the defendant accomplice is charged.

In the years since we decided *Adkins* we have adopted Rule 801(d)(2)(E), and the Supreme Court has decided *Ohio v. Roberts*, *supra*, and *United States v. Inadi*, 475 U.S. 387, 106 S.Ct. 1121, 89 L.Ed.2d 390 (1986). In light of these more recent authorities, and to the extent that *Adkins* is inconsistent with these authorities, *Adkins* is now expressly overruled.

**IV**

The appellant contends in his final assignment of error that the trial court's denial of certain of his pre-trial discovery requests constituted prejudicial error. "Subject to certain exceptions, pre-trial discovery in a criminal case is within the sound discretion of the trial court." Syl. Pt. 8, *State v. Audia*, 171 W.Va. 568, 301 S.E.2d 199 (1983), *cert. den.*, 464 U.S. 934, 104 S.Ct. 338, 78 L.Ed.2d 307 (1983). In the absence of an abuse of discretion, the denial of a pre-trial discovery request does not constitute reversible error. Having reviewed the record, we are not persuaded that the trial judge abused his discretion in denying the appellant's motions.

First, the appellant contends that he was prejudiced by the State's failure to disclose until six days before trial inculpatory statements he had made. However, the appellant does not explain the manner in which he was prejudiced by this delay in disclosure. Moreover, the inculpatory statements to which the appellant was denied access were merely cumulative to other, independent and substantial evidence of his guilt, including the statements of co-conspirator White and two eyewitness accounts of the slaying. On these facts, we find that any error in failing to suppress these statements was harmless. Accordingly, reversal is not warranted. *See State v. Lane, supra.*

Second, the appellant complains that he was prejudiced by the trial court's denial of his motion to compel the State to disclose the names of all persons supplying information to law enforcement officials until immediately before trial. Once again, the appellant makes no showing of prejudice warranting reversal. *See State v. Lane, supra.*

Third, the appellant alleges that he was prejudiced by the trial court's denial of his motion to compel the State to produce statements of co-conspirators and police reports until six days before the trial. Under *W.Va.R.Crim.P.* 16(a)(2) and *W.Va.*

*R.Crim.P.* 26.2, witnesses' statements and police reports are not discoverable until the witness has been called, or the report used, at trial. *See State v. Audia, supra.* Because the statements were disclosed *before* they were used at trial, there was no error.

Finally, the appellant claims that the trial judge erred in denying his request to depose certain of the State's witnesses. *W.Va.R.Crim.P.* 15 allows depositions to be taken under "exceptional circumstances" in order to *preserve testimony for use at trial.* We have interpreted this rule to require a showing that the prospective deponent will be "unable" to attend trial. *State v. Ferrell,* 174 W.Va. 697, 329 S.E.2d 62 (1985). No such showing is made by appellant. Accordingly, the trial judge did not abuse his discretion in denying appellant's request to depose these witnesses.

Accordingly, for the reasons set forth above, the judgment of the Circuit Court of Marshall County is affirmed.

Affirmed.