495 S.E.2d 262

**STATE of West Virginia, Appellee,**

v.

**Brian HELMICK, Appellant.**

No. 23785.

Supreme Court of Appeals of
West Virginia.

Submitted Sept. 10, 1997.

Decided Oct. 3, 1997.

James E. Hawkins, Jr., Buckhannon, for the Appellant.

Darrell V. McGraw, Jr., Attorney General, Molly M. McGinley, Assistant Attorney General, Charleston, for the Appellee.

MAYNARD, Justice:

The defendant below, appellant, Brian Helmick, was charged with conspiracy to commit murder in the October 23, 1994 shooting death of Michael W. Hart, Jr. Following a jury trial on April 3 to April 5, 1995 in the Circuit Court of Harrison County, West Virginia, the defendant was found guilty and sentenced to a prison term of one to five years. On appeal to this Court, the defendant assigned three errors seeking reversal of his conviction. For the reasons that follow, we affirm the conviction.

## I.

## FACTS

Shortly before midnight on Sunday, October 23, 1994 in Clarksburg, West Virginia, Michael W. Hart, Jr. was killed as a result of a shotgun blast to his back. When police arrived a few minutes after the shooting, they found Hart lying in the road in front of the SuperAmerica convenience store, where he worked. As a result of the ensuing police investigation, the defendant, Brian Helmick, Lee Allen and Jason Henthorne were charged with conspiracy to commit murder in Hart's death. Counsel for the co-defendants moved for, and the circuit court granted, separate trials for each of the co-defendants.

At the defendant's April 1995 trial, the State offered six witnesses. Relevant to this appeal, one of the witnesses, Charlene Foster, testified that about one week to ten days prior to Hart's shooting, the defendant Helmick, Allen, and Henthorne were together at her apartment. According to Foster, the three talked about how they hated Hart, ultimately formulating a plan in which they would hide behind a fence surrounding the SuperAmerica where Hart worked and shoot him in the back when he came out to check the soft drinks. Foster testified that the defendant and Henthorne left her apartment to telephone SuperAmerica to see if Hart was working that night. When it was discovered that Hart was not working, the alleged plan of the three to shoot Hart was temporarily foiled.

Another witness, John Goots, testified, over the objection of defense counsel, to the acrimonious relationship between Henthorne and Hart. He also testified, again over the objection of defense counsel, that the day following Hart's murder, Henthorne admitted to killing Hart with a 12-gauge shotgun by shooting through the fence beside Super-America while Hart was stacking Cokes.

Finally, Amy Below testified that she drove Henthorne to the SuperAmerica the night of Hart's murder, on an apparent quest to purchase more beer for a party they were both attending. According to Below, she was sitting in her car around the corner from SuperAmerica waiting for Henthorne to return when she heard a loud bang and saw Henthorne running back to the car, looking scared, with shotgun in hand. Apparently at this time Below realized that she was an unwitting accomplice to the crime. She testified that she then drove Henthorne to his house and he took the shotgun inside.

The defendant, who was the only witness the defense presented, denied involvement in or any knowledge of a conspiracy to kill Hart. He admitted that he, Allen, and Henthorne were at Foster's apartment on the night she indicated, but that it was Foster who initiated a discussion regarding Hart, and no one discussed killing Hart that night. According to the defendant, he did leave Foster's apartment with Henthorne for the purpose of calling SuperAmerica to see if Hart was working. However, he contends the reason for Henthorne's call was to affect a reconciliation with Hart.

According to the defendant's brief, Lee Allen was acquitted of the charge of conspiracy to commit murder in an August 1995 trial. The defendant also stated that, in addition to the witnesses who testified in his trial, C. Michael McDonald, Henthorne, and Allen testified at Allen's trial. According to the defendant, McDonald, a former beau of Charlene Foster, testified that Foster advised him that it was her idea to murder Hart. McDonald also testified that he had personally witnessed a gun in Foster's apartment, which Foster claimed to be her own, but that is inconsistent with Foster's testimony. At the defendant's trial, Foster testified she did not own guns or allow them in her apartment. Henthorne, who had earlier pleaded guilty to Hart's murder, testified that there was no plan or scheme to kill Hart, and that he murdered Hart without the assistance of anyone. Further, he corroborated McDonald's testimony that it was Foster who suggested killing Hart and not Allen, as Foster had testified. Finally, according to the defendant, Allen testified that to the best of his knowledge Hart's murder was unplanned. He further testified that neither he nor the defendant assisted in Hart's murder. He added that Foster's account of the alleged conspiracy was not the truth.

Shortly after Allen's acquittal, the defendant moved for a new trial based on newly discovered evidence pursuant to Rule 33 of the West Virginia Rules of Criminal Procedure. This motion was based on the testimony of McDonald, Allen, and Henthorne at Allen's trial. By order of September 15, 1995, the circuit court denied the defendant's motion for a new trial based on the testimony of Allen and Henthorne, concluding that "none of the criteria for a new trial as set forth in Rule 33 of the West Virginia Rules of Criminal Procedure had been met[.]" Specifically, the court found:

a) Trial counsel for the defendant did not present either Lee Allen or Jason Henthorne as witnesses at trial, and no subpoena was issued for their attendance at trial.

b) Trial counsel elected not to provide the testimony of Lee Allen or Jason Henthorne at the trial of the defendant, Brian Helmick.

c) There is no indication that trial counsel attempted to interview the co-defendants, Lee Allen or Jason Henthorne.

d) That there is a (sic) reasonable likelihood the testimony of Lee Allen or Jason Henthorne ought to produce an opposite result since Lee Allen's testimony at his trial was subject to scrutiny, and the testimony of Jason Henthorne at the trial of Lee Allen was unbelievable.[1]

In an order entered on November 9, 1995, the court also denied the defendant's motion for a new trial based on the testimony of McDonald at Allen's trial, by stating:

a) The defendant has failed to show that the admission of the testimony of J. Michael McDonald ought to produce an opposite result in a new trial since Mr. McDonald's testimony would be introduced to impeach the credibility of the State's witness. That witness' credibility was fully and adequately tested in the trial in this matter.

b) The defendant admits that the sole purpose for the introduction of the testimony of Mr. McDonald is to impeach a witness who testified on behalf of the State. A new trial is generally refused when the sole purpose of the new evidence is to discredit or impeach on the opposite side.

On appeal, the defendant requests that this Court reverse his conviction and remand his case for a new trial.

## II.

### DISCUSSION

█ First, the defendant asserts that the trial court erred in refusing his motion for a new trial based upon newly discovered evidence. According to Rule 33 of the West Virginia Rules of Criminal Procedure (1981),[2] "[t]he court on motion of a defendant may grant a new trial to him if required in the interest of justice." "The question of whether a new trial should be granted is within the discretion of the trial court and is reviewable only in the case of abuse." *State v. Crouch*, 191 W.Va. 272, 275, 445 S.E.2d 213, 216 (1994) (citation omitted).

█ It is well-settled that,

" 'A new trial will not be granted on the ground of newly-discovered evidence unless the case comes within the following rules: (1) The evidence must appear to have been discovered since the trial, and, from the affidavit of the new witness, what such evidence will be, or its absence satisfactorily explained. (2) It must appear from facts stated in his affidavit that plaintiff was diligent in ascertaining and securing his evidence, and that the new evidence is such that due diligence would not have secured it before the verdict. (3) Such evidence must be new and material, and not merely cumulative; and cumulative evidence is additional evidence of the same kind to the same point. (4) The evidence must be such as ought to produce an opposite result at a second trial on the merits. (5) And the new trial will generally be refused when the sole object of the new evidence is to discredit or impeach a witness on the opposite side.' Syllabus, *State v. Frazier*, 162 W.Va. [9]35, 253 S.E.2d 534 (1979), *quoting*, Syl. pt. 1, *Halstead v. Horton*, 38 W.Va. 727, 18 S.E. 953 (1894)." Syl. Pt. 1, *State v. King*, 173 W.Va. 164, 313 S.E.2d 440 (1984).

Syllabus Point 1, *State v. O'Donnell*, 189 W.Va. 628, 433 S.E.2d 566 (1993). "If any of the foregoing five essential requirements is not satisfied or complied with, a new trial will

---

**1.** It is obvious from the context of this order that the trial court's finding here contains a typographical error and should read "[t]hat there is *no* reasonable likelihood the testimony of Lee Allen or Jason Henthorne ought to produce an opposite result since Lee Allen's testimony at his trial was subject to scrutiny, and the testimony of Jason Henthorne at the trial of Lee Allen was unbelievable."

**2.** Rule 33 of the West Virginia Rules of Criminal Procedure was amended by order entered June 14, 1995 and the amendment became effective September 1, 1995. Because the defendant's motion for a new trial was prior to September 1, 1995, we will cite to the 1981 Rule.

not be granted on the ground of newly discovered evidence." *State v. Crouch,* 191 W.Va. 272, 276, 445 S.E.2d 213, 217 (1994) (citations omitted). In addition, "[a] new trial on the ground of after-discovered evidence or newly discovered evidence is very seldom granted and the circumstances must be unusual or special." Syllabus Point 9, *State v. Hamric,* 151 W.Va. 1, 151 S.E.2d 252 (1966).

It is the defendant's contention that the testimony of McDonald, Henthorne, and Allen at Allen's trial satisfies all five of the criteria stated above. Essentially, the defendant argues that, despite a thorough investigation, it was not until four months after his trial that his counsel became aware of McDonald and his testimony. Also, because counsel for both Henthorne and Allen advised the defendant's counsel that neither codefendant would be available to testify at the defendant's trial due to Fifth Amendment considerations, their testimony was not available at the defendant's trial even with the exercise of due diligence. The defendant asserts further that this new testimony would challenge the credibility of Charlene Foster, the State's key witness without whom it could not have prevailed, in a way that was not done at the defendant's trial. According to the defendant, this new evidence would then lead to an opposite result at a second trial. This assumption is indicated by the fact that this same evidence brought about Allen's acquittal. The defendant concludes that he did not receive a fair trial due to the unavailability of McDonald, Henthorne, and Allen. After a careful review of the record in this case, we must disagree with the defendant.

At the outset, we note that the defendant failed to produce for the record affidavits of the new witnesses concerning the exact nature of the new evidence. Instead, the defendant represented the content of the testimony of the three new witnesses in his motion and memorandum of law below and in his brief to this Court.[3] The absence of such affidavits limits this Court's ability to

review the basis of the trial court's ruling on this issue. As noted above, the trial court found, in part, that "there is [no] reasonable likelihood the testimony of Lee Allen or Jason Henthorne ought to produce an opposite result since Lee Allen's testimony at his trial was subject to scrutiny, and the testimony of Jason Henthorne at the trial of Lee Allen was unbelievable."[4] We can find nothing in the record that causes us to conclude that the trial court abused its discretion in making this finding.

■ Also, we are not convinced that due diligence was exercised to secure the testimony of Henthorne and Allen. In the defendant's memorandum of law in support of his motion for a new trial based upon newly discovered evidence, the defendant states:

> both counsel for Defendant Henthorne and Defendant Allen advised Defendant Helmick's trial counsel upon inquiry that neither of their clients would be available to testify at the Helmick trial due to Fifth Amendment considerations. Defense counsel for Helmick did not offer Defendant Henthorne or Defendant Allen at trial due to this unequivocal posture taken by the Defendants' counsel.

We believe, however, that something more is required in order to show due diligence in such situations. The trial court found on this issue that Allen and Henthorne were not presented as witnesses at the defendant's trial, no subpoena was issued for their attendance at the trial, and "there is no indication that trial counsel attempted to interview the co-defendants, Lee Allen or Jason Henthorne." Without further evidence of due diligence, we find no reason to disagree with the trial court on this issue.

■ In addition, we believe Allen's testimony is cumulative of the defendant's testimony at his trial.

> To be cumulative, newly-discovered evidence must not only tend to prove facts which were in evidence at the trial, but

---

3. In addition, attached to the defendant's brief to this Court are photocopies of two articles from the August 3 and 4, 1995 editions of *The Clarksburg Exponent* concerning Allen's trial and containing summaries of testimony at the trial.

4. *See* footnote 1.

must be of the same kind of evidence as that produced at the trial to prove these facts. If it is of a different kind, though upon the same issue, or of the same kind on a different issue, the new evidence is not cumulative.

Syllabus Point 2, *State v. O'Donnell*, 189 W.Va. 628, 433 S.E.2d 566 (1993). The defendant testified that he neither participated in or was aware of any plans to kill Hart. Likewise, Allen apparently testified that neither he nor the defendant assisted, aided, or encouraged the murder of Hart. This simply amounts to the denial by another alleged co-conspirator of the existence of the conspiracy. It is, therefore, simply the same kind of evidence upon the same issue.

■ Further, we believe that the trial court did not abuse its discretion in denying the defendant's motion for a new trial based on McDonald's testimony at Allen's trial. Although conceding that the primary purpose of McDonald's testimony is to impeach Foster's testimony, the defendant relies on *State v. Stewart*, 161 W.Va. 127, 239 S.E.2d 777 (1977) where this Court recognized that, under certain circumstances, newly discovered evidence consisting solely of impeachment testimony may be sufficient to warrant a new trial where all the other elements of the newly discovered evidence test are met. In *Stewart* the newly discovered evidence not only impeached the State's principal witness, but also provided support for the defendant's alibi defense. In that case, this Court concluded that such evidence could well produce an opposite result at a new trial.

We find that the newly discovered evidence in this case falls short of the *Stewart* standard. According to the defendant, McDonald testified at Allen's trial that Foster told him it was her idea to murder Hart and he had personally seen a gun in Foster's apartment. This contradicts Foster's testimony that she does not own a gun. A review of the record in this case reveals that this evidence was fully and adequately brought out in Foster's cross-examination and in the defendant's testimony. Because there is nothing new or material in McDonald's testimony, it is simply cumulative of the defendant's own testimony and Foster's cross-ex-

amination. Therefore, we agree with the trial court that the defendant has failed to show that such evidence ought to produce an opposite result at a second trial on the merits.

In sum, we believe that the "newly discovered" evidence in this case does not satisfy several of the five essential requirements for the granting of a new trial. We also believe the "newly discovered" testimony is not so unusual or special that it would produce an opposite result. Accordingly, we find that the trial court committed no error in denying the defendant's motion for a new trial.

■ Second, the defendant asserts that the trial court committed reversible error in admitting hearsay in the form of a co-conspirator's post-conspiracy confession to the underlying murder. This assignment of error concerns the testimony at the defendant's trial of John Goots who testified that Henthorne confessed to Hart's murder. It is the defendant's contention that the statement at issue does not fall within the co-conspirator exemption to the hearsay rule, because it was made after the termination of the conspiracy, and, therefore, was inadmissible hearsay.

Generally, out-of-court statements made by someone other than the declarant while testifying are not admissible unless: 1) the statement is not being offered for the truth of the matter asserted, but for some other purpose such as motive, intent, state-of-mind, identification or reasonableness of the party's action; 2) the statement is not hearsay under the rules; or 3) the statement is hearsay but falls within an exception provided for in the rules.

Syllabus Point 1, *State v. Maynard*, 183 W.Va. 1, 393 S.E.2d 221 (1990). Rule 801(d)(2)(E) (1994) of the West Virginia Rules of Evidence provides that "a statement is not hearsay if ... [t]he statement is offered against a party and is ... a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy." Long before the codification of the West Virginia Rules of Evidence it was established that "[t]he declarations or admissions of a participant in a conspiracy, made after the conspiracy has terminated, are not admissi-

ble in evidence against a coconspirator of the person making the declarations or admissions." Syllabus Point 1, *State v. Price,* 114 W.Va. 736, 174 S.E. 518 (1934), *overruled by State v. Adkins,* 162 W.Va. 815, 253 S.E.2d 146 (1979), *overruled by State v. Lassiter,* 177 W.Va. 499, 354 S.E.2d 595 (1987).[5] This is in line with Rule 801(d)(2)(E) inasmuch as, to be admissible, the co-conspirator's statement must have been made *in the course of* the conspiracy.[6] In *State v. Jarrell,* 191 W.Va. 1, 7, 442 S.E.2d 223, 229 (1994) this Court held that tape-recorded statements to the police, made by a co-conspirator to commit murder after the death of the intended victim, cannot be admitted under Rule 801(d)(2)(E) because the statements "quite clearly were not made 'during the course and in furtherance of the conspiracy.'"

The "usual rule" for determining what behavior was "during the course" of the conspiracy is whether the behavior "was made while the plan was in existence and before its complete execution or termination."

*State v. Yslas,* 139 Ariz. 60, 63, 676 P.2d 1118, 1121 (1984), *quoting* J. Weinstein and M. Berger, 4 *Weinstein's Evidence* ¶ 801(d)(2)(e), p. 176 (1981); *See also United States v. Tombrello,* 666 F.2d 485, 490 (11th Cir.1982), *cert. denied,* 456 U.S. 994, 102 S.Ct. 2279, 73 L.Ed.2d 1291 (1982) ("... co-conspirators' hearsay statements made after the termination of the conspiracy are not admissible[.]"); *State v. Willis,* 559 N.W.2d 693 (Minn.1997). Although some courts hold that a conspiracy terminates for the purpose of the Rule 801(d)(2)(E) analysis "when the substantive crime for which the co-conspirators are being tried is either attained or defeated," *State v. Darby,* 123 Ariz. 368, 372, 599 P.2d 821, 825 (1979) (citation omitted); *see also United States v. Smith,* 520 F.2d 1245 (8th Cir.1975), we are persuaded by those jurisdictions that hold that "[a] conspiracy to commit a crime does not necessarily end with the commission of the crime." Syllabus Point 1, *State v. Shelton,* 51 Ohio St.2d 68, 364 N.E.2d 1152 (1977), *vacated on other grounds,* 438 U.S. 909, 98 S.Ct. 3133, 57 L.Ed.2d 1153 (1978). Instead, under Rule 801(d)(2)(E) of the West Virginia Rules of Evidence, "a declaration of a conspirator, made subsequent to the actual commission of the crime, may be admissible against any co-conspirator if it was made while the conspirators were still concerned with the concealment of their criminal conduct or their identity." Syllabus Point 2, *Id.* (citation omitted).

In such circumstances, however, the co-conspirator's statement must still, in some way, further the aims of concealing the conspiracy. *See State v. Daniels,* 92 Ohio App.3d 473, 636 N.E.2d 336 (1993) (letter

---

**5.** Syllabus Point 2, *State v. Adkins,* 162 W.Va. 815, 253 S.E.2d 146 states:

Syl. pt. 1 of *State v. Price and Bruce,* 114 W.Va. 736, 174 S.E. 518 (1934) and syl. pt. 2 of *State v. Bennett,* 157 W.Va. 702, 203 S.E.2d 699 (1974) are expressly overruled because they are over-broad and in that regard incorrectly state the law. The proper rule concerning admissions and confessions of co-conspirators in the trial of another conspirator is that the admission or confession of an accomplice standing alone, may not be introduced into evidence against another accomplice as an admission against interest; however, one accomplice may testify against another accomplice about the events surrounding the crime with which the defendant accomplice is charged, about the defendant accomplice's part in that crime, about events leading up to the formation of the conspiracy, and about the part the testifying accomplice played in the conspiracy, (including any incidental admissions) so long as the defendant accomplice has an opportunity to cross-examine the testifying accomplice and the testifying accomplice is called by the State for the purpose of giving detailed testimony and not for the purpose alone of demonstrating that the testifying accomplice has either confessed or pled guilty to participating in the crime with which the defendant accomplice is charged.

*Adkins* was overruled by *State v. Lassiter,* 177 W.Va. 499, 506 354 S.E.2d 595, 602 (1987) in which the Court stated:

In the years since we decided *Adkins* we have adopted Rule 801(d)(2)(E), and the Supreme Court has decided *Ohio v. Roberts,* [448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980)]*supra,* and *United States v. Inadi,* 475 U.S. 387, 106 S.Ct. 1121, 89 L.Ed.2d 390 (1986). In light of these more recent authorities, and to the extent that *Adkins* is inconsistent with these authorities, *Adkins* is now expressly overruled.

**6.** Even though *State v. Price, supra* was decided before the West Virginia Rules of Evidence were adopted, it remains "a source of guidance" in evidentiary matters. *Reed v. Wimmer,* 195 W.Va. 199, 205, 465 S.E.2d 199, 205 (1995).

written by one co-conspirator to another nine months after object of conspiracy was accomplished which suggested how to testify in order to win an acquittal was held admissible under Rule 801(d)(2)(E)); *State v. Shelton, supra.* (co-conspirator's statement "[c]ome and get that shotgun" made after the victim's death held admissible). However, "[i]t is generally held a mere narrative statement serving no future or immediate purpose· of the conspiracy does not satisfy the requirement, whether communicated to outsiders or to another conspirator." *State v. Anders,* 326 S.C. 392, 483 S.E.2d 780, 783 (App.1997) (citations omitted). The statement at issue appears to be of the latter kind. Although Henthorne's statement was made while the conspirators were apparently still concerned with concealment, we fail to see how it could, in any way, further the aims of concealment. Indeed, Henthorne's admission to someone not involved in Hart's murder, is clearly inimical to the continued concealment of the conspiracy. Therefore, we find that the statement was not properly admissible under Rule 801(d)(2)(E).

■ We believe, however, that the admission of the statement was not reversible error because it could properly have been admitted under the statement against interest hearsay exception provided for by Rule 804(b)(3) of the West Virginia Rules of Evidence.[7] "An appellate court is not limited to the legal grounds relied upon by the circuit court, but it may affirm or reverse a decision on any independently sufficient ground that has adequate support." *Murphy v. Smallridge,* 196 W.Va. 35, 36–37, 468 S.E.2d 167, 168–169 (1996). The trial court's reason for allowing the admission of the testimony at issue is not clear from the record. It appears from the record that the State originally sought the admission of the statement under Rule 804(b)(3) before asserting that it

was admissible under 801(d)(2)(E), although neither party discussed Rule 804(b)(3) in its brief to this Court. Regardless of the trial court's reason, we believe that Rule 804(b)(3) provides for the admission of the statement.

■ In addition, even if the admission of the statement at issue was error we believe it was harmless. Generally, an error in admitting hearsay evidence is harmless where the same fact is proved by an eyewitness or other evidence clearly establishes the defendant's guilt. *See State v. Maynard,* 183 W.Va. 1, 393 S.E.2d 221 (1990); *State v. Smith,* 181 W.Va. 700, 384 S.E.2d 145 (1989); *People v. Robinson,* 874 P.2d 453 (Colo.App. 1993); *United States v. McCoy,* 721 F.2d 473 (4th Cir.1983), *cert. denied,* 466 U.S. 940, 104 S.Ct. 1918, 80 L.Ed.2d 465 (1984); *U.S. v. Williams,* 41 F.3d 192 (4th Cir.1994), *cert. denied,* 514 U.S. 1056, 115 S.Ct. 1442, 131 L.Ed.2d 321 (1995). In the present case, the statement at issue is cumulative of Amy Below's testimony. Below testified that on the night of Hart's murder she drove Henthorne to his house where he retrieved a gun case, and then drove him to SuperAmerica, stopping a short distance away. She further testified that while waiting for Henthorne to return from SuperAmerica, she heard a loud bang and saw Henthorne run back to her car carrying a shotgun. She then drove Henthorne back to his home and he took the shotgun inside. Also, the State produced sufficient evidence of the existence of a conspiracy to murder Hart, and that Henthorne and the defendant were a part of that conspiracy. In addition, we note that the hearsay statement at issue does not implicate the defendant in the murder of Hart, and does not contradict the defendant's own testimony that he did not know who killed Hart. Therefore, we conclude that, even if the admission

7. Rule 804(b)(3) of the West Virginia Rules of Evidence (1994) states:

(b) *Hearsay exceptions.——* The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

(3) Statement against interest.—— A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless he or she believed it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

of Henthorne's statement was error, it was harmless error.

Finally, we note that in his brief to this Court, the defendant also raises as an assignment of error that "[t]he trial court committed reversible error in admitting inadmissible hearsay statements to show prior bad acts of the Defendant." However, the defendant did not argue or brief this assignment of error nor direct our attention to relevant portions of the record. This Court previously stated in Syllabus Point 6 of *Addair v. Bryant*, 168 W.Va. 306, 284 S.E.2d 374 (1981) that "[a]ssignments of error that are not argued in the briefs on appeal may be deemed by this Court to be waived." Therefore, this assignment of error is considered abandoned.

## III.

## CONCLUSION

For the foregoing reasons, the judgment of the Circuit Court of Harrison County is affirmed.

Affirmed.