313 S.E.2d 440

**STATE of West Virginia**

v.

**James Curtis KING.**

No. 15991.

Supreme Court of Appeals of
West Virginia.

Submitted Jan. 11, 1984.

Decided March 2, 1984.

David R. Tyson, Tyson & Tyson, Huntington, for appellant.

Chauncey H. Browning, Jr., Atty. Gen., John E. Shank, Asst. Atty. Gen., Charleston, for appellee.

PER CURIAM:

James Curtis King appeals from an order of the Circuit Court of Cabell County denying his motion for a new trial under Rule 33 of the West Virginia Rules of Criminal Procedure based on newly discovered evidence. The evidence King relied on was a written confession made after his trial by a third person. Finding no error, we affirm.

■ Rule 33 provides that a court upon motion may grant a new trial if required in the interest of justice. Our traditional statement of the law about the requirements for a new trial on the basis of newly discovered evidence is:

"A new trial will not be granted on the ground of newly-discovered evidence unless the case comes within the following rules: (1) The evidence must appear to have been discovered since the trial, and, from the affidavit of the new witness, what such evidence will be, or its absence satisfactorily explained. (2) It must appear from facts stated in his affidavit that plaintiff was diligent in ascertaining and securing his evidence, and that the new evidence is such that due diligence would not have secured it before the verdict. (3) Such evidence must be new and material, and not merely cumulative; and cumulative evidence is additional evidence of the same kind to the same point. (4) The evidence must be such as ought to produce an opposite result at a second trial on the merits. (5) And the new trial will generally be refused when the sole object of the new evidence is to discredit or impeach a witness on the opposite side." Syllabus, *State v. Frazier*, 162 W.Va. 935, 253 S.E.2d 534 (1979), *quoting*, Syl. pt. 1, *Halstead v. Horton*, 38 W.Va. 727, 18 S.E. 953 (1894).

*See also State v. Stewart*, 161 W.Va. 127, 239 S.E.2d 777 (1977).

■ Only when all the requirements have been satisfied is a new trial warranted in the interests of justice. These requirements obviously reflect the fact that such motions are not favored by the courts. "A new trial on the ground of after-discovered evidence or newly discovered evidence is very seldom granted and the circumstances must be unusual or special." Syllabus Point 9, *State v. Hamric*, 151 W.Va. 1, 151 S.E.2d 252 (1966). The question of whether a new trial should be granted depends on the circumstances of the case and is a matter largely in the discretion of the trial court. *State v. Nicholson*, 170 W.Va. 701, 296 S.E.2d 342, 344 (1982).

On September 16, 1982, King was tried and convicted by a jury of uttering a forged instrument in violation of W.Va. Code, 61-4-5. On December 27, 1982, William Carter, III prepared a notarized letter confessing to the uttering charge for which King was convicted. Upon receipt of this confession, King's counsel filed a motion for a new trial alleging that Carter's confession constituted newly discovered evidence requiring a new trial. At the hearing on the motion, King testified that Carter and he were fellow prison inmates at Huttonsville Correctional Center prior to his September trial and that during that time Carter told him that he, Carter, had committed the offense. Carter, against the advice of counsel and without a grant of immunity, testified that he committed the offense. Carter also stated that he believed King knew he committed the offense prior to his September, 1982 trial, but he did not think he had yet confessed to him. The trial court denied the motion on the grounds that the confession was not newly discovered and that due diligence was not exercised to present the evidence at trial.

■ No one would doubt that a confession by another person to the crime, if discovered after trial, could be a ground for a new trial on the basis of newly discovered evidence. A confession by another person, however, does not invariably require a new trial; the integrity of the confession is for the trial court. *See, e.g., Bean v. United States*, 679 F.2d 683 (7th Cir.1982); *State v. Talbot*, 408 So.2d 861

(La.1981). In *State v. Sparks*, 171 W.Va. 820, 298 S.E.2d 857 (1982), we affirmed the denial of a new trial where a third party, Farson, confessed to the crime while confined with Sparks in a county jail after Sparks' trial and conviction. The close relationship that existed between Farson and Sparks and the fact that Farson was retarded and easily influenced and was unable to give details about commission of the crime all militated against giving much weight to Farson's confession. We affirmed the trial court's finding that Farson's confession would be offset by his prior inconsistent statements and thus would not result in an acquittal in the event of retrial.

The question then is whether King was entitled to a new trial in the circumstances of this case. Proper discussion of the issue requires a brief review of the evidence introduced at his trial. The State's evidence was that on February 8, 1982 between 4:30 and 5:00 p.m., a young black male entered the Glaser Furniture Company store in Huntington, West Virginia and purchased two lamps with a check drawn on the account of Action, Inc., payable to one Gregory Ward. He presented two pieces of identification indicating he was Gregory Ward and was given the difference between the amount of the check and the cost of the lamps. Because of concern about the validity of the check, an employee of the store obtained the license number of the car he was driving and it was then written on the back of the check.

The owner of the store soon discovered that the check had been stolen from Action, Inc., and contacted the local police. A city detective determined that the license number on the check was listed to one Tommy Turner who was known by the city police. Six photographs of young black males who resembled Turner were located. King's photograph, as fate would have it, was included in the group. This group of photographs was then given to Crystal Cole, the furniture store employee who approved the check, and she immediately picked out King's photograph as depicting the person who cashed the check. She was positive in her identification, saying King's eyes were distinctive and that she had an opportunity to observe him for approximately twenty minutes from a distance of two or three feet under the bright lights of the furniture store. She later identified him at trial.

King denied committing the offense and testified that he had never been in the furniture store and that at the time the crime was committed he was at his girlfriend's house where he was spending a lot of time recovering from recent knee surgery. However, no corroborating testimony was presented supporting the alibi defense.

The defense also presented evidence that William Carter, III, not King, committed the offense. Terry McDaniels stated that she saw Carter take a check off the kitchen table of a friend's house in Huntington, leave the house, and return about forty-five minutes later with two lamps and an undisclosed amount of cash. On cross-examination McDaniels was given immunity by the trial court and admitted that she had been a friend of King's for two or three years and had participated in passing several checks stolen from Action, Inc., during the first three months of 1982. She also testified that she had previously been convicted for uttering a forged prescription and was out on parole when she was involved in cashing the stolen checks. She identified Carter's photograph and described him as having long, curly hair. Both King and Carter's photographs were introduced in evidence by the State and passed to the jury. King also testified that he advised his attorney that McDaniels had implicated Carter in the crime several months prior to trial.

King did not meet the requirements for a new trial. First, the evidence relied on—Carter's confession—was not, in fact, newly discovered, that is, discovered after the trial. King testified that Carter had confessed to him prior to trial. According to King's own testimony then, the only thing new about Carter's confession was that it was in writing. The evidence relied on was thus within the defendant's knowledge prior to trial and does not qualify as newly discovered evidence. *See State v. Milam*, 159 W.Va. 691, 226 S.E.2d 433, 440 (1976).

Equally important is the fact that due diligence was not exercised to secure the evidence from Carter. Despite King's knowledge of Carter's confession, no effort whatsoever was apparently made to secure his testimony at trial. Even if King was confused as to when Carter first confessed to him, the defense was not only aware of Carter's possible involvement in the crime and where he was, but even presented McDaniel's testimony implicating Carter at trial. Yet, Carter was never subpoenaed to testify and it appears he was never asked if he would be a witness. No continuance was sought for this purpose. In these circumstances, any claim of diligence is completely undermined by the failure to determine the availability of Carter's testimony.

Recognizing the weakness of his position on the due diligence issue, King's counsel asserts that he could not have secured Carter's confession at trial because Carter, if called as a witness, would have invoked his Fifth Amendment right to remain silent. We find no merit in this assertion. This argument is premised on the wholly unsupported assumption that Carter would have relied on his constitutional right not to be compelled to testify against himself.

We are of the opinion that due diligence required that Carter be produced as a witness to determine if his testimony was unavailable due to constitutional immunity. In *State v. McDonough*, 350 A.2d 556 (Me. 1976), the defendant's brother confessed to the offense in a case where the government's evidence as to the identity of the perpetrator was of questionable accuracy. The defendant's brother had, however, confessed to the defendant's lawyer prior to trial, but said if he were called as a witness he would plead the Fifth Amendment. The court in affirming the denial of a new trial stated:

"If a situation could arise in which testimony which was unavailable at time of trial because of constitutional immunity later becomes available, entitling a defendant to a new trial, this is not such a situation. The defendant admits that he was at time of trial aware of his brother's claim of guilt but he elected to make no attempt to present this testimony to the Court and jury.

We note that in order to raise a declarant's constitutional immunity for the purpose of satisfying the unavailability requirement for the admission of a declaration against interest, the declarant must actually be produced as a witness and refuse to testify. *Goates v. Fortune Lincoln Mercury, Inc.*, 446 S.W.2d 913 (Tex.Civ.App.1969). A similar requirement should obtain in a case such as the one now before us in which the defendant seeks a new trial based upon the unavailability of a witness's testimony due to constitutional immunity. The defendant who seeks a new trial is required to make all diligent efforts to introduce into evidence any existing exculpatory facts before he may be allowed to plead reasonable excuse for his failure to present that evidence. We perceive two reasons for adopting this policy. First, on our facts, the defendant may not confidently assume that the witness, called to the stand and placed under oath, would invariably adhere to his out-of-court position. More importantly, however, Patrick's in-court refusal to testify would have substantiated the defendant's claim that his failure to produce the evidence was occasioned by his belief that Patrick would not exculpate his brother by incriminating himself. Although we do not suggest that this defendant was guilty of any wrongdoing, excuses for failure to produce "evidence" at trial may be manufactured all too easily once a defendant has gambled on acquittal and lost." *State v. McDonough*, 350 A.2d 556, 560–561 (Me.1976).

Defense counsel's argument also overlooks the fact that had Carter been called to testify and relied on his constitutional rights not to incriminate himself, the trial court to promote the ends of justice could have compelled him to testify under a grant of immunity. W.Va.Code, 57–5–2; *see State ex rel. Brown v. MacQueen*, 169 W.Va. 56, 285 S.E.2d 486 (1981).

Thus, two of the stringent requirements for a new trial based on newly discovered evidence have not been satisfied. Further-

more, whether Carter's confession would probably lead to an acquittal in the event of retrial is far from clear. Carter and King are friends. They had discussed the crime in prison prior to Carter's written confession. Even so, at the hearing on the motion, Carter testified that he could not remember several facts about the commission of the crime, including the name of the payee on the check and what type of identification he used to cash it. Carter stated that he cashed the check in the late evening, but the State's evidence was that the crime was committed between 4:00 and 5:00 p.m. The record also shows that the black male who uttered the check wore his hair in an "Afro", as did King, but that Carter wore his in braids or curls. The jury had a photograph of both King and Carter, and by its verdict rejected the claim that King had been mistakenly identified. Carter also contradicted the trial testimony of Terry McDaniels, stating that he did not see her on the day he passed the forged check. These circumstances raise substantial questions as to the integrity and truthfulness of Carter's confession and substantially lessen the probability of a different result on retrial. In our view, the trial court was not misguided as to the direction in which the interest of justice lay.

The trial court thus committed no error in denying the motion for a new trial, and we affirm its judgment.

Affirmed.