433 S.E.2d 566

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**Charles Daniel O'DONNELL, Defendant Below, Appellant.**

**No. 21143.**

Supreme Court of Appeals of West Virginia.

Submitted March 9, 1993.

Decided July 22, 1993.

R. Thomas Czarnik, Princeton, for appellant.

Mario J. Palumbo, Atty. Gen., Marcella Gower, Asst. Atty. Gen., Charleston, for appellee.

WORKMAN, Chief Justice:

Charles Daniel O'Donnell appeals from a December 12, 1991, order of the Circuit Court of Summers County, West Virginia, denying Appellant's motion to set aside his conviction of the felonies of sexual assault of a spouse and two counts of aiding and abetting sexual assault in the second degree and for a new trial based upon the grounds of newly-discovered evidence. Finding that the circuit court erred in not granting the Appellant a new trial on the grounds of newly-discovered evidence, we reverse the decision of the circuit court and remand this case for entry of an order awarding a new trial to the Appellant.

On July 30, 1989, Appellant brought Colin T., a seventeen-year-old juvenile, and Tommy Martin home with him from a bar, ostensibly to obtain money for the purchase of additional alcohol. After arriving at his home, Appellant suggested to the two men that they engage in group sex with his wife. During a period of at least an hour, all three men had sexual intercourse of the varying kinds specified in West Virginia Code § 61–8B–6(a)(1) (1992),[1] together or singly with Maureen O'Donnell, Appellant's wife.[2] No one denied that the sexual acts occurred. Rather, the issues before the jury at trial were consent, forcible compulsion, and earnest resistance.

Following the completion of the sexual acts, Appellant drove Colin T. and Tommy Martin to their respective homes. Appellant testified that he left his home with these two men at approximately 2:05 a.m. Mrs. O'Donnell, wearing only a bathrobe and carrying the eldest of her two young children, arrived at the Hinton Police Station around 3:00 a.m. According to the police officers with whom she spoke, Mrs. O'Donnell was in such an emotional state that it took them quite some time to learn her name and her complaint. Ultimately, the police officers drove her to her home so she could collect her other child and then took her to the Summers County Hospital for examination. The examining physician found no signs of injury or force, except a bruise on Mrs. O'Donnell's neck. The emergency room record which was admitted in evidence bears the notation: "Old bruises all over the body." The examining nurse who made this notation testified at trial that Mrs. O'Donnell told her that "fresh bruises appeared on her body after the shower."[3] The nurse testified that she had observed these bruises "[o]ver the entire thigh areas."

Appellant was arrested at his home later that day on July 31, 1989. The arresting officers testified that at that time of the arrest the marital home was in the condition of "a normal, average American home[,]" typical of those occupied by two children. Following the arrest and incarceration of Appellant, Mrs. O'Donnell left Hinton, but gave the police permission to search the house. Despite Mrs. O'Donnell's testimony that her undergarments and the bedsheets were torn up as a result of the sexual events which occurred on July 30, 1989, the police were unable to locate any such items as a result of their search of the home.

At trial, Mrs. O'Donnell testified that she returned to the marital home on August 19, 1989. While she admitted removing various items from the house, she denied taking any letters or photographs from the house. On August 23, 1989, the investigator employed by the defense went to the

---

1. Sexual intercourse is defined within West Virginia Code § 61–8B–6(a)(1) as "any act between persons married to each other involving penetration, however slight, of the female sex organ by the male sex organ or involving contact between the sex organs of one person and the mouth or anus of his or her spouse."

2. The trial court gave an instruction to the jury on Appellant's behalf which stated that none of the sexual acts engaged in were illegal between consenting adults.

3. The emergency room record does not bear any notation regarding the observation of fresh bruises and the explanation offered at trial by the examining nurse for this omission was that she had already signed the report and noted a time thereon which precluded the addition of any further notations following her signature.

house upon Appellant's instructions to secure photos and letters about group sex or "kinky" sex. The investigator testified that the house was in good order with "nothing ... really out of the ordinary." When the police returned to the house on August 24, 1989, they found it had been ransacked. A neighbor testified at trial that he saw Mrs. O'Donnell a "few days" prior to his talking with the investigator on August 25, 1989 in the company of other people removing grocery bags with "papers, envelopes, stuff like that." Mrs. O'Donnell denied removing any such items from the home.

Appellant was tried on charges of committing one count of sexual assault against his spouse in violation of West Virginia Code § 61–8B–6(b)[4] and two counts of aiding and abetting sexual assault in the second degree against his spouse in violation of West Virginia Code § 61–8B–4 (1992)[5] on January 23, 1990, through January 26, 1990. Following a jury finding of guilt on all three counts, Appellant was sentenced on May 9, 1991,[6] to the following: A two to ten-year prison term and fifteen hundred dollar fine on the count of sexual assault against his spouse; ten to twenty years and three thousand dollar fine on each of the counts of aiding and abetting sexual assault in the second degree against his spouse. The sentence for the aiding and abetting counts were ordered to run concurrently with each other and consecutively with the sexual assault against a spouse conviction.

While incarcerated in the Summers County Jail, Appellant received a letter postmarked July 7, 1991, from Maryland with no return address. The letter, bearing the temporal designation of "6–10–91," and purporting to be from Mrs. O'Donnell, read as follows:

"Danny,

Now it's over and there is nothing you can do about it. I told you long ago they're my kids. We had fun that night. It was the only way I would get away from you and West Virginia.

I 'sleep' where I want now. Maybe one, maybe with two, you will never know. It does not matter who you show this to, it will do you no good. You've been sentenced, and I don't think your appeal will work either.

So [I]n [sic] closing, just know that you will never see Ryan or Jerry again. Have a good life. I know I'm going to. You should have known no one would believe you without the pictures.

Goodbye forever!

Maureen Michele Murphy"

On August 23, 1991, Appellant filed a motion for a new trial relying on his receipt of the June 10, 1991, letter. Following an evidentiary hearing on November 22, 1991, the trial court denied Appellant's motion for a new trial. By order entered on December 12, 1991, the trial court found "that there is a strong probability that she [Mrs. O'Donnell] wrote the letter as testified to by the forensic handwriting experts of both the State and defendant." The trial court further found that such "evidence, if it is

---

**4.** West Virginia Code § 61–8B–6(b) provides that:

A person is guilty of sexual assault of a spouse when such person engages in sexual penetration or sexual intrusion with his or her spouse without the consent of such spouse; and (i) The lack of consent results from forcible compulsion; or (ii) Such person inflicts serious bodily injury upon anyone; or (iii) Such person employs a deadly weapon in the commission of the offense.

**5.** West Virginia Code § 61–8B–4 sets forth the offense of sexual assault in the second degree:

(a) A person is guilty of sexual assault in the second degree when:
(1) Such person engages in sexual intercourse or sexual intrusion with another per-

son without the person's consent, and the lack of consent results from forcible compulsion; or
(2) Such person engages in sexual intercourse or sexual intrusion with another person who is physically helpless.
(b) Any person who violates the provisions of this section shall be guilty of a felony, and, upon conviction thereof, shall be imprisoned in the penitentiary not less than ten nor more than twenty-five years, or fined not less than one thousand dollars nor more than ten thousand dollars and imprisoned in the penitentiary not less than ten nor more than twenty-five years.

**6.** The delay in sentencing was due to the fact that Appellant failed to appear at the originally scheduled sentencing hearing.

to be believed, would be cumulative on the issue of consent" and "that no one can find or verify that this newly discovered evidence is such that it ought to produce an opposite result at a second trial on the merits...." It is from the denial of his motion for a new trial that Appellant now complains.

■ The five-prong standard for granting a new trial on the ground of newly-discovered evidence was restated in syllabus point one of *State v. King*, 173 W.Va. 164, 313 S.E.2d 440 (1984):

'A new trial will not be granted on the ground of newly-discovered evidence unless the case comes within the following rules: (1) The evidence must appear to have been discovered since the trial, and, from the affidavit of the new witness, what such evidence will be, or its absence satisfactorily explained. (2) It must appear from facts stated in his affidavit that plaintiff was diligent in ascertaining and securing his evidence, and that the new evidence is such that due diligence would not have secured it before the verdict. (3) Such evidence must be new and material, and not merely cumulative; and cumulative evidence is additional evidence of the same kind to the same point. (4) The evidence must be such as ought to produce an opposite result at a second trial on the merits. (5) And the new trial will generally be refused when the sole object of the new evidence is to discredit or impeach a witness on the opposite side.' Syllabus, *State v. Frazier*, 162 W.Va. [9]35, 253 S.E.2d 534 (1979), *quoting*, Syl. pt. 1, *Halstead v. Horton*, 38 W.Va. 727, 18 S.E. 953 (1894).

173 W.Va. at 164, 313 S.E.2d at 441.

The newly-discovered evidence at issue in this case is the June 10, 1991, letter that Appellant claims to have received while incarcerated. The authorship of the letter is not in substantial dispute,[7] as both par-ties' expert witnesses and even the trial judge concluded that the letter "was probably written by her [Mrs. O'Donnell]."[8] Despite its conclusion that "there is a strong probability that ... [Mrs. O'Donnell] wrote the letter as testified to by the forensic handwriting experts of both the State and defendant[,]" the court nonetheless denied the new trial motion, finding

that the aforesaid letter dated June 10, 1991, would be relevant and material on the issue of the victim's consent to the acts of sexual intercourse with the defendant and his codefendants on the elements of the victim's earnest resistance and forcible compulsion; that the evidence proffered by the defendant is, in fact, newly discovered evidence subsequent to the defendant's conviction....

The Court further finds that the evidence, if it is to be believed, would be cumulative on the issue of consent....

In resolving the issue of cumulativeness, the trial court initially misapplied the concept of cumulative evidence and further appears to have utilized an inappropriate balancing test. In its most general sense, cumulative evidence is evidence offered to prove what has already been established by other evidence. *See* Black's Law Dictionary 380 (6th ed. 1990). This Court elucidated in *State v. Frazier* that "cumulative evidence is additional evidence of the same kind to the same point." Syllabus, 162 W.Va. at 935, 253 S.E.2d at 535. The evidence upon which the trial court relied in concluding that the letter would be cumulative on the issue of consent included:

the defendant having been allowed to introduce evidence at trial of the victim's alleged prior sexual conduct with third parties, in the presence of the defendant, of the victim's alleged statements or writings regarding her interest in group sex, and also of the victim's alleged motives in bringing false charges against

---

7. Mrs. O'Donnell denied writing the letter during her testimony at the November 22, 1991, hearing on Appellant's motion for a new trial.

8. According to Appellant, handwriting analysis is expressed in terms of likelihood. A handwriting analysis result is either "no" or is expressed in terms of "probably yes" or "probably no." In this case, the State's handwriting expert opined that Mrs. O'Donnell "[p]robably prepared" the letter. The defense's expert testified that all the known exemplars of Mrs. O'Donnell's handwriting for comparison were internally consistent and consistent with the letter dated June 10, 1991.

the defendant in order to deprive him of custody or visitation....

■ The fact that the issue of Mrs. O'Donnell's consent to the sexual acts had been raised and made the subject of evidence by the defense does not automatically render any further evidence on the issue of consent cumulative. The essence of cumulative evidence is the superfluousity of the evidence; that is, to be properly designated as cumulative, "evidence of the same kind to the same point" must have previously been admitted. *Id.* at 935, 253 S.E.2d at 535. In further explanation,

> [t]o be cumulative, newly discovered evidence must not only tend to prove facts which were in evidence at the trial, but must be of the same kind of evidence as that produced at the trial to prove those facts. If it is of a different kind, though upon the same issue, or of the same kind on a different issue, the new evidence is not cumulative.

58 Am.Jur.2d *New Trial* § 448 (1989).

■ The evidence presented by the June 10, 1991, letter is not identical in kind to the evidence presented at trial by the defense on the issue of consent. While the Appellant offered some evidence in support of his defense of consent, certainly statements by the alleged victim which amount to an admission of the Appellant's defense are dramatically different, both in quality and character. Because the evidence contained within the letter is alleged to have originated from the State's principal witness and because the statements within the letter are completely contradictory to Mrs. O'Donnell's in-court testimony on the ultimate issue, the new evidence is unquestionably novel in kind and therefore not cumulative, by definition.

Appellant analogizes this letter to a confession by another person to a crime which, dependent upon the confession's integrity, may be grounds for a new trial. *See King*, 173 W.Va. at 165, 313 S.E.2d at 442. Appellee prefers to liken the letter to a recantation, emphasizing that new trials are granted when recantation is involved "[o]nly under circumstances where there are credible corroborating circumstances that would lead the trial court to conclude that the witness did, indeed, lie at the first trial...." *State v. Dudley*, 178 W.Va. 122, 126, 358 S.E.2d 206, 210 (1987) (quoting *State v. Nicholson*, 170 W.Va. 701, 703–04, 296 S.E.2d 342, 344–45 (1982)). Here, such corroborating circumstances exist, since two handwriting experts have determined that the letter was probably written by Mrs. O'Donnell. Clearly, the letter contains several statements against interest,[9] the combined effect of which is not only to suggest that Mrs. O'Donnell may have lied during the trial, but also to corroborate Appellant's defense to the charges against him. The evidentiary significance of an admission against interest is that, rather than qualifying as merely impeachment in nature, it is independent substantive evidence. 58 Am.Jur.2d *New Trial* § 437 (1989). Given the admissions against interest within the letter coupled with the dissimilar nature of this newly-discovered evidence as contrasted to the evidence presented at trial, the correspondence cannot be viewed as cumulative.

The transcript from the hearing on Appellant's motion for a new trial reveals that the trial judge considered the fact that, in his opinion, the evidence admitted on the issue of consent was "evenly balanced." Whether or not the evidence proffered on both sides of an issue appears equally-balanced quantitatively has no relevance whatsoever on the issue of cumulativeness. As discussed above, evidence is cumulative only when, by its nature, it is so substantially similar in kind that it is almost identical to evidence already admitted to the same point. *See Frazier*, 162 W.Va. at 935, 253 S.E.2d at 535.

As an additional ground for refusing to grant a new trial, the circuit court opined that even if the letter were introduced, it

---

**9.** A statement against interest is defined by Rule 804(b)(3) of the West Virginia rules of Evidence as:

> A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability, or to render invalid a claim by him against another, that a reasonable man [person] in his position would not have made the statement unless he believed it to be true.

**634**

would not be sufficient to secure Appellant's acquittal. This Court noted in syllabus point 2 of *State v. Stewart*, 161 W.Va. 127, 239 S.E.2d 777 (1977), that to be admissible newly-discovered evidence must be of the type "as ought to produce an opposite result at a second trial on the merits." *Id.* at 128, 239 S.E.2d at 779. The facts of *Stewart* compelled us to conclude "that there is a substantial likelihood that this newly-discovered evidence 'ought to produce an opposite result' on retrial." 161 W.Va. at 141, 239 S.E.2d at 785. Similarly, because the newly-discovered evidence at issue corroborates the Appellant's defense to the sexual assault charges in such a manner that if one believes Mrs. O'Donnell authored the letter one is more inclined to accept the defense's theory of the case, this Court concludes that the newly-discovered evidence creates a "substantial likelihood" that Appellant would be acquitted on retrial. *Id.*

Based on the foregoing opinion, the decision of the Circuit Court of Summers County is hereby reversed and remanded for entry of an order granting a new trial to the Appellant.

Reversed and remanded with directions.