445 S.E.2d 213

**STATE of West Virginia, Appellee,**

v.

**Lanny CROUCH, Jr., Appellant.**

**No. 21883.**

Supreme Court of Appeals of West Virginia.

Submitted May 11, 1994.

Decided May 26, 1994.

Darrell V. McGraw, Jr., Atty. Gen., Stephen R. Van Camp, Asst. Atty. Gen., Charleston, for appellee.

E. Joseph Buffa, Jr., Charles R. Garten, Charleston, for appellant.

NEELY, Justice:

We granted this appeal because of our concern that evidence had been tampered with at Lanny Crouch's murder trial. Upon review, we find that the weight of the evidence shows that this did not occur.

Mr. Crouch was convicted of first degree murder without mercy following a jury trial in the Circuit Court of Wyoming County on 10–12 March 1986. We affirmed Mr. Crouch's conviction in *State v. Crouch*, 178 W.Va. 221, 358 S.E.2d 782 (1987).

On 17 May 1990, Ann Lawson, secretary of the Wyoming County Prosecutor Paul Goode, informed the prosecutor that while working as chief dispatcher for the Wyoming County Sheriff's Department, she was approached by her supervisor, Deputy Sherill Parker, the chief investigating officer in the 1986 murder case against Mr. Crouch. According to Ms. Lawson's affidavit, which Prosecutor Goode sent to Mr. Crouch's trial counsel, Deputy Parker directed her to alter the Criminal Investigation Bureau [C.I.B.] report on Deputy Janet Morgan, who had taken Mr. Crouch's confession of murder in 1985, because Deputy Parker was concerned that the C.I.B. report would contain information on two bad check warrants that would harm Deputy Morgan's credibility.

Pursuant to Rule 33 of the *West Virginia Rules of Criminal Procedure*, Mr. Crouch moved the circuit court for a new trial. At the 26 June 1992 hearing on the motion for a new trial, Ms. Lawson testified that, pursuant to Deputy Parker's request, she printed the C.I.B. report with the worthless check information and then retyped the information into the computer without the worthless check charge, printed the new document and cleared the screen. Deputy Parker denied ordering Ms. Lawson to alter the record.

At the same hearing, Lieutenant B.L. Baker of the Department of Public Safety testified that he arrested Deputy Morgan in the late 1970s on a Logan County warrant for a worthless check. According to Lieutenant Baker, he then transported Deputy Morgan to the Logan County line and transferred her to another officer. Lieutenant Baker did not fingerprint Deputy Morgan; he did not know what became of the charges in Logan County and was unable to find a C.I.B. record of Deputy Morgan's arrest.

Corporal Sharon Dietz, the assistant records officer at the Criminal Identification Bureau of the Department of Public Safety, testified that Deputy Morgan's records could not have been altered because there had never been a C.I.B. file on Deputy Morgan. As to the possibility that her record had been expunged, Corporal Dietz testified that any expungement of files requires a court order and no expungement record existed for Deputy Morgan. Corporal Dietz also noted that there was no record of any arrest of Deputy Morgan. The circuit court found that Corporal Dietz's testimony that no C.I.B. report on Deputy Morgan had ever existed was credible. We do not find this ruling contrary to the evidence.

At the same hearing, Mr. Crouch also sought to relitigate the trial court's ruling that Mr. Crouch's confession to the 1986 murder was voluntarily given and thus admissible. At Mr. Crouch's suppression hearing before the original trial, conflicting evidence was presented regarding the circumstances of Mr. Crouch's confession. According to Mr. Crouch, Deputy Morgan, on her own initiative, took a statement from Mr.

Crouch after Mr. Crouch had made an initial appearance before the magistrate and requested the appointment of a lawyer, but before he had an opportunity to consult with counsel. Deputy Morgan, however, maintained that it was Mr. Crouch and not she who initiated the conversation; according to Deputy Morgan, it was Mr. Crouch who asked Deputy Morgan if he could talk to her in private before Mr. Crouch met with counsel. The trial court found that Mr. Crouch initiated the conversation with Deputy Morgan, thereby making a voluntary, knowing waiver of his right to counsel.

At the hearing on the motion for new trial, Keith Francis, a corrections officer at the Wyoming County Jail in April 1985 who had helped process Mr. Crouch, testified that he had stayed with Mr. Crouch throughout the booking process and heard no conversation between Mr. Crouch and Deputy Morgan. According to Mr. Francis, Deputy Morgan's only request was that the corrections officer bring Mr. Crouch downstairs to a private room after booking.

Dean Meadows, a corrections officer in Wyoming County in 1985 who had processed Mr. Crouch at the jail following his arrest for murder, testified that he was also with Mr. Crouch at all times throughout the processing. Yet while Mr. Meadows stated that he observed Deputy Morgan speaking to Mr. Crouch and did not recall Mr. Crouch initiating the conversation, Mr. Meadows, although subpoenaed as a witness at trial, did not testify to such observations. After hearing all testimony, the court found that Mr. Crouch's statement to Deputy Morgan was initiated by Mr. Crouch before his confession. This finding by the circuit court is also not contrary to the weight of the evidence.

Finally, Mr. Crouch introduced testimony at the hearing that the State had withheld exculpatory evidence concerning the dismissal of a 1979 criminal case against the State's key witness, Gregory Ervin, due to Mr. Ervin's incompetence to stand trial, despite Mr. Crouch's specific requests for such evidence. Mr. Ervin was with Mr. Crouch when Mr. Crouch committed the murder.

Mr. Crouch's father [the senior Mr. Crouch], who had worked closely with de-fense counsel during preparation of his son's defense, testified at the hearing that several years after the murder trial, he visited the Prosecuting Attorney's office in search of information about Mr. Ervin. During that visit, the senior Mr. Crouch was given access to a 1979 criminal file containing medical records of Mr. Ervin which indicated that Mr. Ervin had been found incompetent to stand trial and not criminally responsible for his actions. According to the senior Mr. Crouch, the State intentionally withheld that file in order that doubt would not be cast on Mr. Ervin's credibility at trial. The lower court found that the evidence had not been withheld.

On the basis of these findings, the court denied Mr. Crouch's motion for new trial on 9 February 1993. Mr. Crouch appealed.

### I.

Mr. Crouch argues that the trial court abused its discretion in denying Mr. Crouch's motion for a new trial pursuant to Rule 33 of the *West Virginia Rules of Criminal Procedure* [1981]. We disagree.

■ Under Rule 33 of the *West Virginia Rules of Criminal Procedure* [1981], the trial court may grant a new trial to a defendant "if required in the interest of justice." The question of whether a new trial should be granted is within the discretion of the trial court and is reviewable only in the case of abuse. *State v. King*, 173 W.Va. 164, 313 S.E.2d 440 (1984).

■ In Syllabus point 1 of *State v. O'Donnell*, 189 W.Va. 628, 433 S.E.2d 566 (1993), we reiterated our traditional statement of the law on the requirements for a new trial on the basis of newly discovered evidence:

> "A new trial will not be granted on the ground of newly-discovered evidence unless the case comes within the following rules: (1) The evidence must appear to have been discovered since the trial, and, from the affidavit of the new witness, what such evidence will be, or its absence satisfactorily explained. (2) It must appear from facts stated in his affidavit that plaintiff was diligent in ascertaining and secur-

ing his evidence, and that the new evidence is such that due diligence would not have secured it before the verdict. (3) Such evidence must be new and material, and not merely cumulative; and cumulative evidence is additional evidence of the same kind to the same point. (4) The evidence must be such as ought to produce an opposite result at a second trial on the merits. (5) And the new trial will generally be refused when the sole object of the new evidence is to discredit or impeach a witness on the opposite side." Syllabus, *State v. Frazier*, 162 W.Va. [9]35, 235 [253] S.E.2d 534 (1979), *quoting*, Syl. pt. 1, *Halstead v. Horton*, 38 W.Va. 727, 18 S.E. 953 (1894). Syl. Pt. 1, *State v. King*, 173 W.Va. 164, 313 S.E.2d 440 (1984).

If any of the foregoing five essential requirements is not satisfied or complied with, a new trial will not be granted on the ground of newly discovered evidence. *See State v. Spradley*, 140 W.Va. 314, 84 S.E.2d 156 (1954) (citing cases in support of this proposition).

■ The newly-discovered evidence at issue in this case included: (1) the alleged alteration of the C.I.B. report on Deputy Morgan; (2) testimony relating to the voluntariness of Mr. Crouch's confession; and (3) certain portions of a criminal file containing exculpatory evidence allegedly withheld by the State. In reviewing the lower court's findings relating to this allegedly newly-discovered evidence, we will not disturb the lower court's conclusions when there is factual support for such findings unless the lower court's conclusions are plainly wrong or against the weight of the evidence. *State v. Fauber*, 175 W.Va. 324, 332 S.E.2d 625 (1985); *State v. Nicholson*, 174 W.Va. 573, 328 S.E.2d 180 (1985).

### A.

■ With regard to the alleged alteration of Deputy Morgan's C.I.B. report at the behest of Deputy Parker, the lower court was presented with conflicting evidence: Ms. Lawson testified that the C.I.B. report was altered; Deputy Parker denied Ms. Lawson's allegation; Corporal Dietz testified that no C.I.B. report for Deputy Morgan ever exist-

ed. The court, deeming that Corporal Dietz's testimony was credible, found that the alleged alteration did not occur. Because this finding of fact was not plainly wrong or against the weight of the evidence, we will not disturb such a finding on review.

### B.

■ The lower court also was not plainly wrong in holding that Mr. Crouch initiated the conversation with Deputy Morgan that led to his confession of guilt. Again, the testimony was conflicting: Deputy Morgan testified that Mr. Crouch approached her; Mr. Crouch maintained that Deputy Morgan elicited a statement from him before he could consult with counsel. Mr. Francis, the corrections officer present in the booking room where the conversation, heard no words spoken between Mr. Crouch and Deputy Morgan. Mr. Meadows, another corrections officer present, observed Deputy Morgan speaking to Mr. Crouch but did not know who initiated the conversation.

■ Under *O'Donnell*, 189 W.Va. at 632, 433 S.E.2d at 570, if evidence could have been procured with due diligence before the verdict, then a new trial based on after-discovered evidence is not warranted. *See also State v. Sparks*, 171 W.Va. 320, 298 S.E.2d 857 (1982); *State v. King*, 173 W.Va. 164, 313 S.E.2d 440 (1984). The record shows that Mr. Crouch was fully aware that Mr. Meadows and Mr. Francis were present in the room when Deputy Morgan allegedly initiated a conversation with Mr. Crouch. If Mr. Crouch knew these men were present, the simplest of inquiries would have determined if they had any evidence to offer concerning the voluntariness of Mr. Crouch's confession. That Mr. Crouch failed to exercise due diligence in procuring the testimony of Mr. Meadows and Mr. Francis thus warrants the trial court's refusal to award a new trial as well.

### C.

■ Mr. Crouch next argues that the Prosecuting Attorney's failure to provide Mr. Crouch with requested exculpatory information concerning Mr. Ervin's incompetence to

stand trial in a 1979 criminal case against Mr. Ervin, hampered the preparation and presentation of Mr. Crouch's defense. According to Mr. Crouch, had the exculpatory evidence been provided, it would have created a reasonable doubt that otherwise did not exist.

Again, the lower court was presented with conflicting evidence. Mr. Crouch contended the Prosecuting Attorney intentionally failed to provide Mr. Crouch with specific information that Mr. Crouch had requested. The State, however, maintains that defense counsel's cross-examination of Mr. Ervin concerning the 1979 criminal case against Mr. Ervin demonstrates that the evidence was not withheld. According to the State, if Mr. Crouch's counsel knew about Mr. Ervin's convictions and arrests, then the dismissal of the 1979 criminal case against Mr. Ervin was within the records of the cases disclosed by the State.

Furthermore, even absent the information concerning the dismissal of the 1979 criminal case against Mr. Ervin, the credibility of Mr. Ervin was placed in question before the jury. The State reported that Mr. Ervin had been a patient at a psychiatric hospital on numerous occasions in opening and direct examination. Mr. Crouch's counsel recounted Mr. Ervin's prior trouble with the law and his six days at the psychiatric hospital. Mr. Crouch's counsel also cross-examined Mr. Ervin on Mr. Ervin's fantasy world, his dreams of violence and his fear of satanic cults.

Under *O'Donnell*, 189 W.Va. at 632, 433 S.E.2d at 570, "... the evidence must be such as ought to produce an opposite result at a second trial on the merits." Because Mr. Ervin's credibility was sufficiently in question in the first trial, we do not believe an opposite result would be produced at a new trial. Therefore, even if the criminal files allegedly withheld by the State would have cast doubt on Mr. Ervin's credibility, the lower court made no error in refusing to grant Mr. Crouch a new trial.

## II.

■ Finally, Mr. Crouch contends that the circuit court abused its discretion in allowing the participation of a private prosecutor, Warren R. McGraw, in the hearing on the motion for a new trial. Although Mr. McGraw was hired by the victim's family before Mr. Crouch's murder trial and appeared at all stages of the proceeding, Mr. Crouch concedes that the public prosecutor retained control of the case and the presentation of the evidence at the trial level. At the hearing on the motion for new trial, however, Mr. Crouch argues that Mr. McGraw exceeded normal bounds allowable for a private prosecutor by virtually handling the entire case. We disagree.

■ Under *W.Va.Code* 7–7–8 [1993], the employment of a practicing lawyer to assist the State in a criminal prosecution, although not affirmatively authorized, is not prohibited. The specific provision of *W.Va.Code* 7–7–8 [1993] relating to private prosecutors reads:

No provision of this section shall be construed to prohibit the employment by any person of a practicing attorney to assist in the prosecution of any person or corporation charged with a crime.

Although we held in *State v. Atkins*, 163 W.Va. 502, 506, 261 S.E.2d 55, 59 (1979), *cert. denied*, 445 U.S. 904, 100 S.Ct. 1081, 63 L.Ed.2d 320 (1980) that "[t]he specific statutory language [of *W.Va.Code* 7–7–8 [1993]] is nothing more than a proviso or exception designed to demonstrate that the Legislature did not intend to abolish the common law rule permitting the employment of a private prosecutor," we declined to delineate the exact degree of participation allowable for a private prosecutor. We did point out, however, that:

There are several positive reasons for retaining the right to employ a private prosecutor. First, we recognize that there may be occasions when the public prosecutor is in need of assistance in order to carry out his duties effectively. Second, there may be those occasions when the employment of a private prosecutor would satisfy the public's concern that a given case not be accorded perfunctory treatment. Finally, it is not inappropriate to consider that in certain cases, the victim's

family may wish to satisfy itself that the case is being vigorously prosecuted.

*Atkins,* 163 W.Va. at 504, 261 S.E.2d at 58.

In this case, all of these grounds are present. Mr. McGraw was hired by the victim's family to serve as a private prosecutor in order to ensure that the case would be prosecuted vigorously. As the lower court recognized, because Mr. McGraw was involved in the case from its inception, it was proper to continue the hearing with his participation. Moreover, because the public prosecutor could not attend the hearing on the motion for new trial, it was also proper that Mr. McGraw, who was better acquainted with the case than the assistant prosecutor present, handle the hearing. For these reasons, we find the lower court did not abuse its discretion in allowing Mr. McGraw to participate in the hearing on the motion for new trial.

Accordingly, this Court is of the opinion that there is no error in this case.

Affirmed.