**FILED**

**September 27,2021**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs.) No. 20-0331** (Hardy County 2018-F-2)

**Angel Dawn Stump,**
**Defendant Below, Petitioner**

## MEMORANDUM DECISION

Petitioner Angel Dawn Stump, by counsel David C. Fuellhart, appeals from the Circuit Court of Hardy County's February 19, 2020, sentencing order and the circuit court's December 20, 2019, order denying her motion for a new trial. The State of West Virginia, by counsel Patrick Morrisey and Gordon L. Mowen, II, filed a response in support of the circuit court's orders.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the order of the circuit court is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioner was indicted on the following seven felony counts on February 6, 2018:[1] (1) first-degree arson for burning the dwelling house of Deana Deans, Ramon McDonald, and Timothy McDonald; (2) second-degree arson for burning a storage shed owned by Connie Sherman and Becky Brown; (3) second-degree arson for burning a building at the Moorefield Assembly of God; (4) third-degree arson for setting fire to personal property owned by Deana Deans, Ramon McDonald, and Timothy McDonald; (5) third-degree arson for burning property of Hardy Telecommunications (652 feet of fiber cable); (6) conspiracy to commit a felony (first degree arson – count 1); and (7) burglary for breaking into the home of Deana Deans, Ramon McDonald, and Timothy McDonald with the intent to commit a crime.

---

[1] Petitioner was indicted with Mr. Steven Rosier, her stepson. Mr. Rosier entered into a plea agreement with the State as to the first-degree arson charge, and he was sentenced to a term of confinement at the Anthony Correctional Center for youthful offenders.

Several years prior to the events at issue in this appeal, Connie Sherman and her sister inherited property from their father that had a house (the "Sherman home") and a shed. For years prior to her father's passing, Peggy Stump lived on the property and tended to Ms. Sherman's father. Ms. Sherman's father expressed his desire that, upon his passing, Peggy Stump be permitted to continue living on the property rent free. Ms. Sherman and her sister acquiesced to this request, and Ms. Stump lived on the property for a number of years, from approximately 2013 to 2017. Petitioner (Peggy Stump's daughter) moved into the house sometime before 2017.

In 2017, Ms. Sherman and her sister began negotiating with Ms. Peggy Stump to sell her the home. When Ms. Stump asked for owner financing, Ms. Sherman and her sister declined and gave Ms. Stump a deadline to obtain financing. Ms. Stump missed that deadline. In May of 2017, Deana Deans, a neighboring property owner who lived in an adjacent home (the "McDonald home"), had a surveyor mark the property lines, and determined that the shed purportedly owned by Ms. Sherman was either on Ms. Deans' property or was closely abutting it.

Ms. Sherman, who had recently learned that Mr. Steven Rosier and Paige Perry, Mr. Rosier's girlfriend, were living in the shed on the Sherman property, informed petitioner and Peggy Stump that they needed to move the shed and that Ms. Perry and Mr. Rosier needed to leave the property immediately. Mr. Rosier was upset about the instruction to move the shed, and he remarked to his girlfriend that he would burn it down if he had to leave. Petitioner was also upset that the shed needed to be relocated, and she told Mr. Rosier that the neighbors are "going to get what they deserve," and that "karma is a b-----."

During the course of the police investigation into the cause of the fire, petitioner's daughter, Kyla Rosier, gave a written statement to the police implicating petitioner in the arson. Apparently, this statement was what tipped the police off to petitioner's involvement with the arson.

A jury trial was conducted in February 2019. At trial, the State called numerous witnesses, including Mr. Rosier, Ms. Rosier, and Ms. Perry. Additionally, the State called George Harms, a supervisor with the West Virginia State Fire Marshal's Office, who testified that the fire was intentionally set and caused damage to two residences (the Sherman and McDonald homes), a shed, a church, and related personal property.[2]

Mr. Rosier testified that at around midnight on the evening in question he heard a loud noise, which he later learned was caused by petitioner breaking a window on the McDonald home. At around 2:00 a.m., Mr. Rosier saw petitioner dressed in all black, and she told Mr. Rosier that she needed his help. Thereafter, the two climbed over the back fence of the McDonald home, and petitioner said, "I'm going to go in the house, find [the deed or other survey paperwork], rip them up and burn them." Petitioner asked Mr. Rosier to be on the "lookout." Petitioner then entered the

---

[2] The State also called Austin Riggleman, a law enforcement officer involved in the investigation; Connie Sherman, a property owner who owned one of the properties that was affected by petitioner's crimes; Tyler Robinette, a law enforcement officer involved in the investigation; Mr. Jeffrey Sites, Mr. Raymond McDonald, and Mr. Wade Armentrough, who testified regarding the damage caused by the fires; and Linda Sites, who testified as to the actions of petitioner after the fire.

McDonald home through a window. Mr. Rosier testified that "about three minutes later she came back down and when I looked in the window there was light flickering from the top and then she came down the stairs, went into the kitchen, came back from the kitchen with the burning piece of paper and went back towards the front of the house." Petitioner exited the house through the window and told Mr. Rosier "[i]f you tell anyone, I will kill you and your son." Petitioner made a similar threat to Paige Perry, who testified that petitioner threatened to kill her, Mr. Rosier, and her baby.

Ms. Rosier testified that she initially believed petitioner was involved in the arson, but testified that she changed her mind after she "sat down and went over everything in [her] head." She also admitted to making a statement to the police that she overheard petitioner telling someone on the phone that "[Mr. Rosier] and her made a deal that if she paid [Mr. Rosier's] bond that [Mr. Rosier] won't rat her out." When asked about her prior statement, she claimed that she "exaggerated" it and then testified that she did not even overhear such a telephone conversation at all. Ultimately, she testified that she was lying when she gave her statement, at least as it relates to what she overheard.

Petitioner did not call any witnesses and she exercised her right to remain silent.

After the parties rested, petitioner moved to preclude the State from referring to portions of Ms. Rosier's written statement. Specifically, petitioner sought to preclude the State from arguing that Ms. Rosier overheard petitioner say on the phone that she burned down the house or was trying to collect reward monies, since Ms. Rosier did not testify to that at trial. Petitioner argued that Ms. Rosier's written statement could not be used as substantive evidence, and the court noted that it did not admit the actual written transcript of Ms. Rosier's statement into evidence.[3] The court ruled that the parties were free to raise the issue of the witness's prior inconsistent statement to the jury. The court also noted that it would instruct the jury that closing arguments are merely a party's perception of the evidence and not actual evidence. When the State asked to what extent it was permitted to raise the issue of Ms. Rosier's inconsistent statement based upon her trial testimony, the court reiterated that the prosecutor was free to offer argument related to Ms. Rosier's trial testimony, so long as the basis for such argument was grounded in the witness's trial testimony and not solely from the written statement.

During closing arguments, the prosecutor told the jury:

> [T]he defendant's daughter told the police that she overheard her boyfriend on the phone saying that her and Steven made a deal that if Steven didn't tell on her that she would post his bond. I didn't expect her to come in here and tell you that she was lying to the police. I did not expect her to do that. That evidence is crucial in this case, Your Honor, because the defendant would never have been charged based upon the sole word of Steven Rosier.

Petitioner did not object to this argument.

---

[3] However, the court recognized that the prosecutor "did ask questions of that statement to the witness which she responded to so that evidence is before the jury[.]"

3

The jury convicted petitioner on all counts of the indictment, and petitioner filed a renewed motion for judgment of acquittal or, in the alternative, for a new trial, arguing that there was insufficient evidence to support her convictions. She also filed a motion for a new trial based upon newly-discovered evidence, alleging that multiple individuals who were incarcerated with Mr. Rosier overheard him contradicting his trial testimony and, further, that Mr. Rosier wrote multiple letters that contradicted his testimony. The court conducted evidentiary hearings[4] but denied the motion after noting several deficiencies with the motion. Specifically, the circuit court found that petitioner failed to show that she could not have diligently discovered the "newly-discovered" evidence prior to trial; that, even accepting the new evidence as true, the testimony of the witnesses was cumulative; and further finding that the evidence was not likely to produce a different result at trial.

Petitioner was sentenced on January 28, 2020, to a determinate term of twenty years for her first-degree arson conviction; two years for both of her second-degree arson convictions; one year for both of her third-degree arson convictions; an indeterminate term of not less than one nor more than five years for the conspiracy conviction; and not less than one nor more than fifteen years for the burglary conviction. The court ordered all sentences to run concurrently and awarded petitioner credit for time served. Additionally, the court ordered that petitioner and her co-defendant be jointly and severally liable for restitution[5] to the victims.

Petitioner appealed. On appeal, she claims that there was insufficient evidence to support her convictions. Next, she claims that the circuit court erred when it failed to grant her a new trial. Finally, petitioner claims that the circuit court committed plain error when it allowed certain arguments by the State during closing argument. We will address each of these arguments below.

Initially, petitioner challenges the sufficiency of the evidence to support her convictions. We have held that

> [w]hen a criminal defendant undertakes a sufficiency challenge, all the evidence, direct and circumstantial, must be viewed from the prosecutor's coign of vantage, and the viewer must accept all reasonable inferences from it that are consistent with the verdict. This rule requires the trial court judge to resolve all evidentiary conflicts and credibility questions in the prosecution's favor; moreover,

---

[4] At these hearings, petitioner presented affidavits and testimony from several females who were incarcerated at Potomac Highlands Regional Jail ("PHRJ"). These women allegedly had contact with Mr. Rosier while he was incarcerated at that facility. Notably, however, Mr. Rosier denied speaking with any females during his incarceration at PHRJ. Further, per the testimony of a captain at the facility, communication between male and female jail inmates is prohibited, although the facility is aware that some communication occurs between cracks in the windows and by passing notes under doors. Additionally, petitioner's cell was not located anywhere close to the window where the conversations were alleged to have occurred.

[5] The court ordered restitution in the amount of $157,282.21.

as among competing inferences of which two or more are plausible, the judge must choose the inference that best fits the prosecution's theory of guilt.

Syl. Pt. 2, *State v. LaRock*, 196 W. Va. 294, 470 S.E.2d 613 (1996). Further,

> [t]he trial court's disposition of a motion for judgment of acquittal is subject to our *de novo* review; therefore, this Court, like the trial court, must scrutinize the evidence in the light most compatible with the verdict, resolve all credibility disputes in the verdict's favor, and then reach a judgment about whether a rational jury could find guilt beyond a reasonable doubt.

*Id.* at 304, 470 S.E.2d at 623.

Mr. Rosier testified that petitioner started the fire. He testified that, before the fire, petitioner told him that the victims would get what they had coming. Further, both Mr. Rosier and Paige Perry testified that petitioner approached them before the fire, wearing all black, and asked Mr. Rosier to help her with something. Finally, both Paige Perry and Mr. Rosier testified that petitioner told them that she would kill them if they "ratted her out." Although petitioner claims that Mr. Rosier's "testimony was filled with inconsistent and incredulous [sic] testimony" there is nothing in the record that suggests that Mr. Rosier was incompetent to testify. Accordingly, viewing the evidence in the light most favorable to the State, we find that a rational jury could find petitioner's guilt beyond a reasonable doubt. Thus, we refuse to disturb petitioner's convictions based upon this assignment of error.

Next, petitioner asserts that the circuit court erred when it failed to grant her motion for a new trial based upon newly-discovered evidence. We have recognized that "[t]he question of whether a new trial should be granted is within the discretion of the trial court and is reviewable only in the case of abuse." *State v. Crouch*, 191 W. Va. 272, 275, 445 S.E.2d 213, 216 (1994). More recently, we discussed that "Rule 33 [of the West Virginia Rules of Criminal Procedure] enables a circuit court to grant a new trial to a defendant if required in the interest of justice." *State v. Woodrum*, 243 W. Va. 503, 507, 845 S.E.2d 278, 282 (2020).

In *Woodrum*, we held

> Although the ruling of a trial court in granting or denying a motion for a new trial is entitled to great respect and weight, the trial court's ruling will be reversed on appeal when it is clear that the trial court has acted under some misapprehension of the law or the evidence.

*Id.* at Syl. Pt. 1, in part.

Further, we have held

> A new trial will not be granted on the ground of newly-discovered evidence unless the case comes within the following rules: (1) The evidence must appear to have been discovered since the trial, and, from the affidavit of the new witness,

5

what such evidence will be, or its absence satisfactorily explained. (2) It must appear from facts stated in his affidavit that plaintiff was diligent in ascertaining and securing his evidence, and that the new evidence is such that due diligence would not have secured it before the verdict. (3) Such evidence must be new and material, and not merely cumulative; and cumulative evidence is additional evidence of the same kind to the same point. (4) The evidence must be such as ought to produce an opposite result at a second trial on the merits. (5) And the new trial will generally be refused when the sole object of the new evidence is to discredit or impeach a witness on the opposite side.

Syl., *State v. Frazier*, 162 W. Va. 935, 941, 253 S.E.2d 534, 537 (1997) (citation omitted).

To be entitled to relief, petitioner is required to establish each of the first four prongs of the *Frazier* test. As it relates to the diligence requirement, the record reflects that petitioner did not diligently pursue and acquire the evidence which she now wants to introduce. Specifically, although Mr. Rosier was incarcerated for several months prior to petitioner's trial, petitioner failed to demonstrate that she was diligent in procuring the evidence where she did not seek out any statements from inmates to support her theory that Mr. Rosier started the fires until *after* the trial of this matter. Moreover, the record supports the circuit court's finding that the "newly-acquired" evidence was cumulative and was the same type of evidence that was produced at trial. Per petitioner, Mr. Rosier allegedly confessed that he was guilty of arson to several individuals while he was incarcerated. This alleged confession is entirely consistent with Mr. Rosier's trial testimony where he admitted that he was guilty of first-degree arson.[6] Finally, the record supports the circuit court's finding that the newly-discovered evidence was questionable and, further, that the statements are not likely to produce an opposite result at a second trial of this matter.[7] Although

---

[6] As respondent noted, to the extent that the newly-discovered evidence had any relevancy at all, it would have simply gone to the credibility of Mr. Rosier.

[7] As to this issue, the court noted that

The Court CANNOT FIND that the statements now offered on behalf of Defendant Angel Stump are likely to produce an opposite result at a second trial in this matter, especially in light of the fact that the same issues and theory were presented at the trial in this case. Counsel for the Defendant zealously cross-examined all witnesses testifying on behalf of the State and attempted to impeach the witnesses' respective testimony in the presence of the jury, who heard evidence concerning Co-Defendant Rosier's conviction and testimony concerning the theory that Co-Defendant Rosier blamed the Defendant and implicated the Defendant after his bond was revoked.

We note that petitioner did not attack this determination, but instead speculated that the admission of the new evidence "would have likely been sufficient to convince the jury that there was reasonable doubt." Petitioner's mere speculation is insufficient to meet her burden.

petitioner bore the burden of establishing each of the first four prongs of the *Frazier* test, she failed to do so. Accordingly, she is not entitled to relief based upon this assignment of error.

Finally, petitioner argues that the circuit court committed plain error by not declaring a mistrial when the State argued during closing argument that Ms. Rosier's prior statement to law enforcement was crucial evidence where the court had ruled that the prior statement was not substantive evidence and was only to be used for impeachment purposes. Respondent maintains that this argument fails because the State's closing argument conformed with the circuit court's ruling. We agree with respondent.

Petitioner concedes that her counsel did not object to the prosecutor's statements during closing arguments. Thus, she urges this Court to consider this assignment of error pursuant to the plain error doctrine. "To trigger application of the 'plain error' doctrine, there must be (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceedings." Syl. Pt. 7, *State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995). In *Miller*, we held that "[h]istorically, the 'plain error' doctrine 'authorizes [an appellate court] to correct only 'particularly egregious errors' . . . that 'seriously affect the fairness, integrity or public reputation of judicial proceedings[.]'" 194 W. Va. at 18, 459 S.E.2d at 129.

Here, it appears from the record that the prosecutor's statement actually conformed with the trial court's ruling as the prosecutor simply referenced an inconsistency with Ms. Rosier's statement for impeachment purposes. Notwithstanding, on appeal this Court must determine whether the defendant suffered prejudice. This Court has found that "[a] judgment of conviction will not be set aside because of improper remarks made by a prosecuting attorney to a jury which do not clearly prejudice the accused or result in manifest injustice." Syl. Pt. 5, *State v. Sugg,* 193 W. Va. 388, 456 S.E.2d 469 (1995). In *Sugg,* this Court held that the prosecutor's comments should be examined using four factors:

> (1) the degree to which the prosecutor's remarks have a tendency to mislead the jury and to prejudice the accused; (2) whether the remarks were isolated or extensive; (3) absent the remarks, the strength of competent proof introduced to establish the guilt of the accused; and (4) whether the comments were deliberately placed before the jury to divert attention to extraneous matters.

Although we have frequently analyzed prosecutorial comments pursuant to the *Sugg* standard, petitioner fails to cite, analyze, or discuss this test.[8] Here, the prosecutor's comment did not have a tendency to mislead the jury or prejudice the accused. Instead, the prosecutor simply attempted to address a discrepancy in Ms. Rosier's testimony. Additionally, the comment was isolated and not a repeated point. Next, the comment was not offered to establish the guilt of the accused but was instead designed to explain to the jury how the petitioner became implicated in the police investigation. Finally, pursuant to the fourth *Sugg* factor, the comments were not deliberately placed to divert attention to extraneous matters. Instead, the State was merely

---

[8] Petitioner's failure to address this precedent or to support her argument as to this assignment of error runs afoul of the West Virginia Rules of Appellate Procedure. Despite this deficiency, we will nonetheless analyze this assignment of error pursuant to *Sugg.*

addressing a discrepancy in Ms. Rosier's testimony, a point also raised by the defense. Accordingly, this assignment of error fails.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** September 27, 2021

**CONCURRED IN BY:**

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton