IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2018 Term

No. 18-0034

**FILED**

**May 18, 2018**

**released at 3:00 p.m.**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

STATE OF WEST VIRGINIA EX REL.
SCOTT R. SMITH, PROSECUTING ATTORNEY,
Petitioner,

v.

THE HONORABLE DAVID J. SIMS, JUDGE
OF THE CIRCUIT COURT OF OHIO COUNTY;
AND DALLAS MICHAEL ACOFF,
Respondents.

PETITION FOR WRIT OF PROHIBITION

WRIT DENIED

Submitted:  April 10, 2018
Filed:  May 18, 2018

Patrick Morrisey, Esq.
Attorney General
Gordon L. Mowen, II, Esq.
Assistant Attorney General
Charleston, West Virginia
Counsel for Petitioner

Robert G. McCoid, Esq.
McCamic, Sacco, & McCoid PLLC
Wheeling, West Virginia
Counsel for Respondent
Dallas Michael Acoff

CHIEF JUSTICE WORKMAN delivered the Opinion of the Court.
JUSTICE LOUGHRY dissents and reserves the right to file a dissenting opinion.
JUSTICE WALKER dissents and reserves the right to file a dissenting opinion.

SYLLABUS BY THE COURT

1.      "In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight." Syl. Pt. 4, *State ex rel. Hoover v. Berger*, 199 W.Va. 12, 483 S.E.2d 12 (1996).

2.      "'A new trial will not be granted on the ground of newly-discovered evidence unless the case comes within the following rules: (1) The evidence must appear to have been discovered since the trial, and, from the affidavit of the new witness, what such evidence will be, or its absence satisfactorily explained. (2) It must appear from facts stated in his affidavit that plaintiff was diligent in ascertaining and securing his evidence,

i

and that the new evidence is such that due diligence would not have secured it before the verdict. (3) Such evidence must be new and material, and not merely cumulative; and cumulative evidence is additional evidence of the same kind to the same point. (4) The evidence must be such as ought to produce an opposite result at a second trial on the merits. (5) And the new trial will generally be refused when the sole object of the new evidence is to discredit or impeach a witness on the opposite side.' Syllabus Point 1, *Halstead v. Horton*, 38 W.Va. 727, 18 S.E. 953 (1894)." Syl., *State v. Frazier*, 162 W.Va. 935, 253 S.E.2d 534 (1979).

WORKMAN, C. J.:

Petitioner Scott R. Smith, Prosecuting Attorney for Ohio County, West Virginia, brings this matter under the original jurisdiction of this Court. Petitioner seeks a writ of prohibition against Respondent The Honorable David J. Sims, Judge of the Circuit Court of Ohio County, to prevent the trial court from enforcing its order vacating Respondent Dallas Michael Acoff's (the "Defendant") convictions for the second-degree murder of Lemroy Coleman and the malicious wounding of Norman Banks, and granting a new trial based on newly-discovered evidence. Petitioner argues that the trial court erred in finding that the Defendant was diligent in his efforts to secure the trial attendance of Mr. Banks and that Mr. Banks' subsequent testimony exonerating the Defendant would have produced a different outcome at trial.

Upon review, we find this case represents an extraordinary circumstance where a victim and eyewitness to a homicide, who did not testify at trial, subsequently offered testimony exonerating the Defendant. After conducting an evidentiary hearing on the matter, the trial court found that justice demands that the Defendant be awarded a new trial. Because this decision was within its sound discretion, we deny the writ.

## I. BACKGROUND

During the late evening hours of October 9, 2015, gunfire was exchanged outside the American Legion bar (the "Legion") in Wheeling, West Virginia. Lemroy

1

Coleman was shot in the abdomen and died. His friend, Norman Banks, was shot in the leg.

The Legion is located in a high crime area. It is equipped with multiple surveillance cameras (inside and outside) that captured footage of the events. The videos show that Mr. Coleman and Mr. Banks were inside the Legion and they left shortly after the Defendant arrived. The Defendant followed them out and began firing gunshots at them from the stairs of the Legion. When Mr. Coleman returned gunfire, the Defendant retreated inside the Legion. Mr. Coleman and Mr. Banks sprinted toward an alley known as "Lane E," that runs perpendicular to Fifteenth Street. After he was shot, Mr. Banks was able to run to the police station at Fifteenth and Chapline Street to summon help. Before entering the station, Mr. Banks tossed his own firearm in the bushes in front of the police station. He told police that "somebody shot me in the alley. I think they killed him. Go help him before you help me. Help him first, because I think they killed him." The police found Mr. Coleman mortally wounded in Lane E.

Mr. Banks was taken to an area hospital for treatment. The police never obtained a written or recorded statement from Mr. Banks. After he was released from the hospital, Mr. Banks returned to Cleveland, Ohio, to his sister's residence. As explained more fully below, neither the State nor the Defendant secured his attendance at trial.

The Defendant was indicted on multiple charges. Related to this proceeding, he was indicted on first-degree murder and malicious assault. The trial was held in September 2016. The Defendant testified, admitted firing shots at Mr. Coleman and Mr. Banks, and claimed he did so in self-defense. The critical factual dispute was whether the victims were shot by the Defendant directly outside the Legion on Fifteenth Street or whether they were shot moments later by a second shooter after they fled into Lane E. The Defendant's theory of a second shooter in Lane E was established circumstantially at trial.[1] The State listed Mr. Banks as a potential witness but, remarkably, he was not called to testify.

There was no evidence of blood droplets, blood splatter, or a blood trail on Fifteenth Street in front of the Legion leading into Lane E. Nevertheless, the State maintained that the Defendant's guilt was established by his admission that he fired shots at the victims, as well as the video surveillance of the shooting. Moreover, the medical examiner's finding that the bullet entered Mr. Coleman's abdomen at an elevated angle was consistent with the Defendant having shot him from an elevated position (the stairs of the Legion). Following a four-day jury trial, the Defendant was found guilty of the second-degree murder of Mr. Coleman and the malicious wounding of Mr. Banks. He was also convicted of three counts of wanton endangerment, not at issue here.

---

[1] The Defendant testified that he saw a female running out of Lane E. He also called a witness who observed a "commotion" from a group of people there.

Prior to trial, prosecutors mailed a document to Mr. Banks, via United States Mail, at his sister's address, 9200 Denison Avenue in Cleveland. Mr. Banks' sister took a picture of the document with her phone and sent it to him via text message. The trial court noted that it was unclear what this document was because no copy was introduced. Nevertheless, after receiving her text, Mr. Banks believed the document requested his presence at trial. He called a detective and expressed his reluctance to appear. The detective told Mr. Banks that the issue of his trial attendance was up to the prosecuting attorney. Apparently, in response to that conversation, Mr. Banks called the Ohio County Prosecutor's office. Mr. Banks said he was told by a woman answering the phone that the prosecutor was too busy to speak; she asked if he could call back at another time. Mr. Banks did not initiate further contact with the prosecutor's office and it took no steps to enforce a valid subpoena. At trial, the Defendant objected to moving forward without the testimony of Mr. Banks but this objection was overruled.[2]

Following his convictions, the Defendant filed a motion for a judgment of acquittal and a motion for a new trial in December 2016, which the trial court denied. With newly appointed counsel, the Defendant filed a renewed motion for a new trial in June

---

[2] The Defendant did not argue a *Brady* violation because it was not clear at that time whether Mr. Banks' testimony would prove exculpatory. *See Brady v. Maryland*, 373 U.S. 83 (1963). We note that prosecutors have an affirmative duty "to disclose [*Brady*] evidence . . . even though there has been no request [for the evidence] by the accused," which may include evidence known only to police. *Strickler v. Greene*, 527 U.S. 263, 280 (1999). To comply with *Brady*, prosecutors must "learn of any favorable evidence known to the others acting on the government's behalf . . . , including the police." *Strickler*, 527 U.S. at 281 (internal quotation marks and citation omitted).

4

2017, asserting that he had newly discovered evidence. He located Mr. Banks, who was at that time incarcerated in Ohio. The Defendant stated Mr. Banks would exonerate him because Mr. Banks claimed that Jerome Saunders shot him and Mr. Coleman in Lane E.

In August 2017, the trial court conducted an evidentiary hearing on the Defendant's motion for a new trial. The trial court heard testimony from several witnesses including Mr. Banks, Mr. Saunders, and the Defendant's trial counsel, Martin Sheehan. Mr. Banks (who knows Mr. Saunders) testified unequivocally that Mr. Saunders shot him and Mr. Coleman shortly after they entered Lane E. Mr. Banks observed Mr. Coleman fall to the ground immediately upon being shot by Mr. Saunders. Mr. Banks turned to run and was immediately struck by gunfire. Mr. Banks heard three or four gunshots while fleeing the alley. Mr. Banks further testified that, although he could always be reached at his sister's address, he often did not reside there and did not want to testify at trial. Mr. Banks stated he "bounced" from place to place and, at some point, lived in a homeless shelter.

Mr. Saunders testified and denied shooting the men. He claimed to not even be in the area that evening but the trial court noted his testimony was refuted by at least two witnesses who saw Mr. Saunders in the area that night.

After reviewing the newly discovered evidence at the evidentiary hearing, and comparing it to the trial evidence, the trial court granted the Defendant's motion for a

new trial and vacated his convictions for second-degree murder and malicious wounding. The trial court made extensive findings of fact along with credibility determinations.

As outlined more fully below, the trial court made numerous findings concerning the Defendant's attempts to locate Mr. Banks. It concluded that he made diligent efforts under the circumstances to locate Mr. Banks, interview him, and secure his attendance at trial. The trial court also chastised the State for failing to make any lawful attempt to secure the attendance of Mr. Banks at the trial and reminded the prosecutor that it was his duty to seek justice, not convictions. *Nicholas v. Sammons*, 178 W.Va. 631, 632, 363 S.E.2d 516, 518 (1987).

The trial court found Mr. Banks' testimony "highly credible and consistent with the physical evidence introduced at the trial in this matter." In contrast, it found Mr. Saunders not credible. The trial court noted that Mr. Banks was the only witness to have testified at any point in the proceedings as to the identity of his and Mr. Coleman's shooter. Moreover, Mr. Banks' testimony served to explain several pieces of physical evidence that were unexplained at trial. For instance, police found a smashed bullet fired from the same gun that killed Mr. Coleman next to him in Lane E. This bullet was found *around the*

*corner* from where the Defendant stood when he fired shots from the Legion's stairs on Fifteenth Street.[3]

The trial court ultimately concluded "it is more likely than not" that the Defendant did not shoot Mr. Coleman and Mr. Banks on October 9, 2015, and "more likely than not" that Mr. Saunders shot them. The trial court declared "[t]he interests of justice demand that the testimony of Norman Banks be heard and considered by a fair and impartial jury in this matter."

The trial court scheduled the new trial for March 2018. On January 19, 2018, Petitioner filed a writ of prohibition seeking to prohibit the trial court from enforcing its order vacating the Defendant's convictions and granting a new trial. This Court stayed proceedings in the underlying criminal case and heard argument in this matter.

## II.  STANDARD OF REVIEW

Petitioner comes before this Court praying for a writ of prohibition. In doing so, Petitioner does not assert an absence of jurisdiction. Instead, he argues that the trial court abused its discretion in granting a new trial thereby depriving the State of a valid conviction. Our law is well established that

> [i]n determining whether to entertain and issue the writ
> of prohibition for cases not involving an absence of jurisdiction

---

[3] The round that killed Mr. Coleman was identified at trial as a "low velocity" 9 mm round. The shell casing that was recovered from the area where the Defendant was shooting was from a "high velocity" 9 mm round.

7

but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

Syl. Pt. 4, *State ex rel. Hoover v. Berger*, 199 W.Va. 12, 483 S.E.2d 12 (1996). With this standard to guide us, we will now consider the issue before us.

### III. DISCUSSION

The sole issue is whether prohibition lies to prevent the trial court from enforcing its order that vacated the Defendant's convictions of second-degree murder and malicious wounding and granted his motion for a new trial. This Court has held that:

"A new trial will not be granted on the ground of newly-discovered evidence unless the case comes within the following rules: (1) The evidence must appear to have been discovered since the trial, and, from the affidavit of the new witness, what such evidence will be, or its absence satisfactorily explained. (2) It must appear from facts stated in his affidavit that plaintiff was diligent in ascertaining and securing his evidence, and that the new evidence is such that due diligence would not have secured it before the verdict. (3) Such evidence must be new and material, and not merely

8

cumulative; and cumulative evidence is additional evidence of the same kind to the same point. (4) The evidence must be such as ought to produce an opposite result at a second trial on the merits. (5) And the new trial will generally be refused when the sole object of the new evidence is to discredit or impeach a witness on the opposite side." Syllabus Point 1, *Halstead v. Horton*, 38 W.Va. 727, 18 S.E. 953 (1894).

Syl., *State v. Frazier*, 162 W.Va. 935, 253 S.E.2d 534 (1979).

This Court affords trial judges a wide range of discretion in determining whether newly-discovered evidence warrants the grant of a new trial. "This deference is due, in part, to the superior position the trial judge holds when assessing the credibility of the new evidence, an essential component of the determination of whether the evidence would make a different result on retrial probable." *State v. Pinder*, 114 P.3d 551, 565 (Utah 2005).[4]

In the present case, the trial court articulated the prongs of the *Frazier* test and then meticulously applied them to the facts before it. Petitioner contends, nevertheless,

---

[4] *See also State ex rel. Smith v. McBride*, 224 W.Va. 196, 206, 681 S.E.2d 81, 91 (2009) (recognizing trial court has discretion to determine credibility of new evidence). For instance, this Court has indicated, with respect to a newly-discovered confession, that

[n]o one would doubt that a confession by another person to the crime, if discovered after trial, could be a ground for a new trial on the basis of newly discovered evidence. A confession by another person, however, does not invariably require a new trial; the integrity of the confession is for the trial court.

*State v. King*, 173 W.Va. 164, 165, 313 S.E.2d 440, 442 (1984).

that the trial court erred when it granted the Defendant a new trial on the ground of newly-discovered evidence in the form of Mr. Banks' testimony. Specifically, Petitioner asserts the trial court erred when it concluded the Defendant satisfied the second and fourth *Frazier* factors. We address each of these arguments in turn.

With regard to the second *Frazier* factor, Petitioner asserts the trial court erred when it concluded the Defendant was diligent in his attempts to secure Mr. Bank's trial attendance. Petitioner argues that the Defendant knew Mr. Banks could have been contacted at his sister's address: 9200 Denison Avenue, Cleveland, Ohio, as this was the address provided to the Defendant in the State's initial discovery disclosure, four months before trial.

Petitioner's argument is unimpressive. He ignores the uncontested fact that the Defendant's trial counsel, Mr. Sheehan, was notified by the police and/or the assistant prosecutor—*after* the State's initial discovery disclosure—that the police did not know the whereabouts of Mr. Banks. The trial court found that the Defendant could not have reasonably secured the presence of Mr. Banks at trial in light of the foregoing:

> a. Sheehan listed Banks as a witness albeit with an "unknown" address in Defendant's discovery disclosure; he indicated an "unknown" address after he had been notified by detectives and/or counsel for the State in August, 2016, that Banks' whereabouts were then presently unknown. Stated otherwise, the defense intended, at least preliminarily, to employ Banks as a witness, but perceived itself as incapable of identifying his whereabouts based upon representations by the prosecution.

10

b. Banks was affirmatively avoiding being found by anyone given his stated fear that someone would be coming after him.

c. Banks did not have a legal residence at 9200 Denison Avenue, Cleveland, Ohio, his sister's address, and stayed there only infrequently.

d. Banks "bounced" around from place to place and had no identifiable address.

e. Banks was, for a period of time, actually homeless and had received assistance from his probation officer in getting placement in a homeless shelter somewhere in Cleveland.

f. Sheehan continued to make efforts to locate Banks, including interviewing third parties . . . who he believed might have been able to provide him with information or leads as to Banks' whereabouts.

g. Sheehan called and texted the phone number he believed to have been Banks' number, although his calls went unanswered and his texts not responded to.

h. Sheehan forwarded information he had received from Cordell Coleman [the brother of Lemroy Coleman] to the effect that Banks was located near "99th and Denison" in Cleveland to Burgoyne [the Defendant's investigator]. Burgoyne deemed such vague information insufficient for purposes of commencing an investigation into Banks' whereabouts.

Consequently, the Defendant satisfied the "reasonable diligence" prong of *Frazier*. Moreover, while this determination is a mandatory component of *Frazier*, the trial court's primary focus was properly on the significance and impact of the newly discovered evidence, not upon the failings of counsel or whether counsel's lack of diligence was so

11

unjustifiable that it fell below constitutional standards. "If consideration of the newly discovered evidence is essential to a fair trial and a just verdict, the court should be able to grant a new trial without condemning trial counsel as constitutionally ineffective." *People v. Soojian*, 118 Cal. Rptr. 3d 435, 454 (Cal.App.Ct. 2010).

With regard to the fourth *Frazier* factor, Petitioner contends the trial court erred when it concluded that Mr. Banks' testimony would likely have produced a different result at a second trial. Petitioner relies on the video surveillance footage of the shooting, the Defendant's admission to shooting at the victims, and the fact that Mr. Coleman died from a bullet that entered from an elevated position which would be consistent with the Defendant firing from the stairs of the Legion. Petitioner also attacks the credibility of Mr. Banks, a twice-convicted felon, who was on probation at the time of the shooting.

Petitioner's argument is not persuasive for several reasons. First of all, credibility determinations are for the trial court, not this Court. The decision whether, and to what extent, to credit the testimony of Mr. Banks and Mr. Saunders was within the peculiar competence of the trial court, who has seen and heard them testify. Second, Petitioner fails to address the fact that the police found a bullet matched to the one found in Mr. Coleman's body on the ground next to him, fifteen feet up Lane E and around the corner from where the Defendant fired shots. Thus, the crime scene evidence substantiates Mr. Banks' testimony that a second shooter was in Lane E. Third, Petitioner fails to undermine in any meaningful fashion the fundamental basis for the trial court's ruling: Mr.

12

Banks' testimony identifying Mr. Saunders as the perpetrator of these crimes goes to the very essence of the Defendant's guilt or innocence on the charges at issue. If the jury has the benefit of Mr. Banks' testimony, it is likely that a different result will be reached on retrial.[5] Consequently, although a new trial on the ground of newly-discovered evidence is "very seldom granted" this case epitomizes such an extraordinary circumstance. Syl. Pt. 9, in part, *State v. Hamric*, 151 W.Va. 1, 151 S.E.2d 252 (1966).

For that reason, Petitioner has not shown "the existence of clear error as a matter of law[.]" Syl. Pt. 4, in part, *Hoover*, 199 W.Va. at 14-15, 483 S.E.2d at 14-15. Ultimately, the decision to grant a new trial based on newly discovered evidence was within the sound discretion of the trial court. Because a writ of prohibition will not issue to prevent a simple abuse of discretion by a trial court, we conclude that the writ of prohibition sought by Petitioner will not issue.[6]

Finally, a new trial is warranted in the interest of justice.[7] Those entrusted with the responsibility of representing the State at criminal proceedings must never forget

---

[5] Although Petitioner relies heavily on the surveillance footage, the video shows no clear evidence that either victim was struck by the Defendant's gunfire. Both men were able to run from the scene without any obvious physical impairment.

[6] *See* Syl. Pt. 2, *State ex rel. Peacher v. Sencindiver*, 160 W.Va. 314, 233 S.E.2d 425 (1977) ("A writ of prohibition will not issue to prevent a simple abuse of discretion by a trial court. It will only issue where the trial court has no jurisdiction or having such jurisdiction exceeds its legitimate powers. W.Va. Code, 53-1-1.").

[7] *See King*, 173 W.Va. at 165, 313 S.E.2d at 442 ("Only when all the [*Frazier*] requirements have been satisfied is a new trial warranted in the interests of justice.").

their fundamental obligation is not to convict but to see that justice is done. "If fairness and justice are forgotten in the pursuit of a guilty verdict, the integrity and authority of our criminal justice system is challenged." *State v. Goode*, 650 A.2d 393, 397 (N.J.Super.App.Div. 1994). The United States Supreme Court has declared:

> The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor—indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.

*Berger v. U.S.*, 295 U.S. 78, 88 (1935). The same holds true for the prosecuting attorneys of this State. Syl. Pt. 3, *State v. Boyd*, 160 W.Va. 234, 233 S.E.2d 710 (1977).

Therefore, a new trial must be awarded to see that justice is served by securing a lawful conviction. Obviously, if the Defendant was wrongfully convicted of second-degree murder and malicious wounding, the real perpetrator remains free to victimize again. At stake is the very integrity of the criminal justice system and our trial courts' ability to conduct fair trials.

14

## IV.  CONCLUSION

For the reasons stated above, this Court denies the writ of prohibition sought by Petitioner to prevent the Circuit Court of Ohio County from enforcing its December 21, 2017, order.

Writ denied.